UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 09-11635-JGD |
| 434 MAIN STREET, TEWKSBURY, | ) | |
| MASSACHUSETTS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| RUSSELL H. CASWELL, as Trustee | ) | |
| of the Tewksbury Realty Trust, | ) | |
| | ) | |
| Claimant. | ) | |

**MEMORANDUM OF DECISION AND
ORDER ON UNITED STATES' MOTION
TO ENFORCE SETTLEMENT AGREEMENT**

December 16, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

This is an action for civil forfeiture by which the plaintiff, United States of America ("United States" or "Government"), is seeking the forfeiture of real property, including all buildings, appurtenances and improvements thereon, located at 434 Main Street, Tewksbury, Massachusetts (the "Property"). Title to the Property is held by the Tewksbury Realty Trust. The Claimant, Russell H. Caswell, is the Trustee and a beneficial owner of the Trust.

The matter is before the court on the "United States' Motion to Enforce Settlement Agreement and Unseal Pleadings" (Docket No. 65).  By its motion, the United States contends that it reached a settlement with Mr. Caswell during a mediation session that was held on July 14, 2011 pursuant to this court's alternative dispute resolution ("ADR") program, and that it is entitled to an order enforcing the terms of the parties' settlement agreement.[1]  Mr. Caswell denies that the parties ever reached a final settlement, or that they entered into an enforceable agreement.

The parties have submitted various exhibits, including but not limited to, affidavits and a transcript of an ADR conference that took place on July 14, 2011 following the mediation session.  Additionally, the parties presented oral arguments at a hearing before this court on November 2, 2011.  The material facts are not in dispute, and neither of the parties has requested an evidentiary hearing.  After consideration of the parties' submissions and their oral arguments, and for the reasons detailed below, the Government's motion to enforce the settlement agreement is DENIED.

---

[1] By its motion, the United States also moved for an order unsealing the motion, all related pleadings, and any related orders of the court.  The Claimant had no objection to that request, and on October 25, 2011, this court allowed the plaintiff's motion to unseal in accordance with the parties' agreement.  Accordingly, this Memorandum of Decision and Order addresses only the United States' motion to enforce the settlement agreement.

## II. **STATEMENT OF FACTS**[2]

The United States initiated this civil forfeiture action on September 29, 2009 by filing a Verified Complaint for Forfeiture in Rem against the Property. (Docket No. 1). The Property that is the subject of the forfeiture contains a motel, known as the Motel Caswell, which was built by Mr. Caswell's father in 1955, and has been operated by Mr. Caswell and his wife since 1983. (See Cl. Ex. A ¶ 1-3). According to Mr. Caswell, the motel provides income for Mr. Caswell, his family, and nine employees. (Id. ¶ 2). On November 3, 2009, Mr. Caswell filed a claim to the Property. (Docket No. 10). Subsequently, on November 23, 2009, Mr. Caswell filed an Answer on behalf of himself and as Trustee of the Tewksbury Realty Trust, by which he denied the Government's claim of forfeiture and asserted various affirmative defenses. (Docket No. 11).

The parties agreed to participate in mediation pursuant to this court's ADR program. (Pl. Ex. 2 ¶¶ 2-4). A mediation session took place on July 14, 2011 before a United States Magistrate Judge.[3] (Id. ¶ 5). Two Assistant United States Attorneys

---

[2] The facts are derived from pleadings filed in this case, the exhibits attached to the United States' Motion to Enforce Settlement Agreement and Unseal Pleadings (Docket No. 65) ("Pl. Ex. __"), and the exhibits attached to the Claimant's Opposition to United States' Motion to Enforce Settlement Agreement (Docket No. 66) ("Cl. Ex. __"). Although the parties' characterization of the record is in dispute, the material facts relating to the mediation and the parties' communications are undisputed.

[3] Although the transcript from the ADR conference that took place before the Magistrate Judge following the mediation is dated July 15, 2011, there is no dispute that the mediation and the ADR conference occurred on July 14, 2011. (See Motion (Docket No. 65) at 2 n.3; Cl. Opp. Mem. (Docket No. 66) at 3 n.1).

("AUSAs") represented the United States at the mediation. (<u>Id.</u>). Mr. Caswell, along with his counsel, attended the mediation on behalf of the Claimant. (<u>Id.</u>).

Following the mediation session, the Magistrate Judge held an ADR conference with the parties and their lawyers at which the Magistrate Judge recited the terms that the parties had "reached so far" and the matters that were "left to discuss" on the record.[4] (Pl. Ex. 1 at 3). As further detailed in the Transcript of ADR Conference before the Magistrate Judge, the terms that had been "reached so far" concerned details regarding the amount and timing of a settlement payment to be made by the Claimant to the United States; removal of a lis pendens from the Property and dismissal of the United States' claims against the Property; terms and conditions under which the Claimant would engage a commercial real estate broker and attempt to consummate a sale of the Property to an independent third-party purchaser who would not operate the Property as a motel; interim security measures to be implemented by the Claimant during the time when the motel continued to operate; and the effect of the settlement on the Claimant's heirs and assigns. (<u>See</u> Pl. Ex. 1 at 3-6). Although the parties confirmed that they had reached agreement on those matters during the mediation session, it was undisputed that any settlement agreement reached by the AUSAs remained subject to approval from their superiors in Washington, D.C. (<u>See</u> <u>id.</u> at 7). As detailed below, no such approval was ever obtained.

---

[4] The Transcript of ADR Conference is attached to the United States' Motion as Exhibit 1.

The matters that remained "left to discuss" after the mediation session concerned the amount of time that the Claimant would have to reach a Purchase and Sale ("P&S") agreement with any independent, third-party purchaser of the Property, the security measures that the Claimant would need to put in place if the Property was not sold and the motel had to be closed, and the Claimant's request for a confidentiality agreement. (See id. at 4-6). Although the Government indicated its willingness to enter into a confidentiality agreement, the two other issues required further negotiation. (Id.). In particular, the parties agreed that the Claimant would have a period of time of not less than 12 months, and not more than 18 months, to enter into a P&S agreement with any prospective buyer of the Property, but they did not reach agreement as to the precise number of months. (Id. at 4). Additionally, the parties did not reach agreement regarding the nature and extent of the security measures that would need to be implemented if no sale occurred and the Property became vacant. (See id. at 5-6).

In light of the unresolved issues, the Magistrate Judge scheduled a further mediation session. (Id. ¶ 6). He also instructed the parties as follows:

> In the meantime the Government will see if they can get the necessary approvals for this agreement, as far as it is, and the claimants will think about the time period for sale and security measure issues, and counsel for the Government will draft a settlement agreement and share it with claimant's counsel so that when you come back you'll either have everything resolved and won't need to see me or it will be just a narrow set of issues to resolve.

(Id. at 6-7).

Prior to concluding the ADR conference, the Magistrate Judge asked the parties to confirm that he had properly recited the terms that were in agreement "as far as it goes, which is not a binding settlement," and reiterated the fact that the agreement was subject to approval from Washington, and to resolution of the outstanding issues "that require[d] further negotiation." (Id. at 7). The AUSAs did not object to the Magistrate Judge's statement that the parties had not reached a binding settlement, or to his description of the parties' settlement status. (See id.). Both parties confirmed that the Magistrate Judge's description of the settlement, "as far as it goes," was correct. (Id. at 7-8).

Following the July 14, 2011 mediation session, counsel for the parties engaged in discussions aimed at resolving the outstanding issues regarding the security measures and timing of a P&S agreement. (See Pl. Ex. 2 ¶ 8; Cl. Ex. B ¶ 2). It is undisputed that Mr. Caswell never agreed to any terms regarding those issues, and that he decided instead to withdraw from the settlement negotiations and proceed with the litigation. (See Pl. Ex. 2 ¶¶ 8-10; Cl. Ex. A ¶¶ 10-11). It also is undisputed that the AUSAs were unable to obtain final approval for the settlement from Washington because the parties had not reached an agreement on all of the issues. (See Cl. Exs. C & D). Moreover, the record indicates that no draft settlement agreement was ever completed and produced to the Claimant's counsel. (See Cl. Ex. B ¶ 2). On September 15, 2011, the Magistrate Judge reported that "[f]urther efforts to settle this case at this time are in my judgment, unlikely to be productive[,]" and that the case should be restored to the court's trial list. (Docket No. 55).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. ANALYSIS

#### A. Standard of Review

The court has "an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court." Dankese v. Defense Logistics Agency, 693 F.2d 13, 16 (1st Cir. 1982). "Thus, a party to a settlement agreement may seek to enforce the agreement's terms when the other party refuses to comply." Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008). Where, as here, the material facts are not in dispute, it is up to the court to determine whether a binding agreement has been reached. See Wang Labs., Inc. v. Applied Computer Sciences, Inc., 958 F.2d 355, 359-60 (Fed. Cir. 1992) (concluding, based on undisputed facts, that plaintiff was not entitled to enforcement of unexecuted draft settlement agreement). Moreover, in cases such as this, where the underlying cause of action is federal in nature, a motion to enforce a settlement agreement "is determined in accordance with federal law." Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999).

"A settlement agreement is a contract that is interpreted according to general principles of contract law. Once entered into, the contract is binding and conclusive." Powell v. Omnicom, BBDO/PHD, 497 F.3d 124, 128 (2d Cir. 2007) (internal citation omitted). Therefore, "[w]hen a party makes a deliberate, strategic choice to settle, a court

cannot relieve him of that . . . choice simply because his assessment of the consequences was incorrect." Id.

However, "'before enforcing settlement, the district court must conclude that agreement has been reached on all material terms.'" Therma-Scan, Inc. v. Thermoscan, Inc., 217 F.3d 414, 419 (6th Cir. 2000) (quoting Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir. 1988)). "A district court does not have the power to impose a settlement agreement when there was never a meeting of the minds." Wang Labs., Inc., 958 F.2d at 359. Accordingly, "it is clear that the district court only retains the power to enforce *complete* settlement agreements[.]" Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983). "Where there has been no meeting of the minds sufficient to form a complete settlement agreement, . . . the case [must be] restored to the docket for trial." Id. The application of these principles to the instant case compels the conclusion that there is no enforceable settlement agreement between the United States and the Claimant, and that the Government's motion to enforce such an agreement must be denied.

### B.   No Meeting of the Minds

It is undisputed that the parties never reached an agreement on all of the essential terms of a settlement. As the Magistrate Judge described, and the parties confirmed at the mediation, the parties failed to resolve the issue regarding the time frame within which the Claimant would be required to sign a P&S agreement with a prospective purchaser of the Property. They also failed to reach an agreement regarding the security measures that would need to be implemented if the Property was not sold to an independent, third-party

buyer. Accordingly, there was "no meeting of the minds sufficient to form a complete settlement agreement[.]" Id.

The Government argues that this court nevertheless has the power to enforce the parties' agreement because the unresolved issues were "ministerial" and "minor" rather than material to the overall settlement. (See Motion (Docket No. 65) at 4, 9-10). This court disagrees. As an initial matter, the Government's effort to minimize the significance of the outstanding issues ignores the nature of the defendant Property. As described above, the Claimant relies on the operation of a motel on the Property as a source of income for himself and his family. For an individual like the Claimant, the difference between having 12 months to negotiate a P&S agreement and 18 months to sign such an agreement could have a significant impact on his future financial security. Similarly, the prospect of maintaining long-term security measures at an abandoned motel property for an individual like Mr. Caswell can hardly be deemed insubstantial or insignificant.

Additionally, the undisputed facts demonstrate that the outstanding matters were material to the parties' settlement agreement. Significantly, the record shows that the parties agreed with the Magistrate Judge's statement that their agreement did not constitute a binding settlement, but remained subject "to the issues that require further negotiation[.]" (Pl. Ex. 1 at 7). Moreover, in August 2011, counsel for the Government sent two separate emails to the Claimant's attorney in which she informed him that she could not obtain final approval for the settlement from her superiors in Boston or

-9-

Washington until the parties were able to come to an agreement on the two unresolved issues. (Cl. Exs. C & D).[5] Because the parties never reached a meeting of the minds on those material matters, this court lacks the power to grant the plaintiff's motion. Compare Fid. & Guar. Ins. Co., 541 F.3d at 6 (affirming enforcement of handwritten settlement agreement containing clear and unambiguous terms that were "not contingent on the successful outcome of further negotiations"); Eswarappa v. Shed Inc./Kid's Club, 685 F. Supp. 2d 229, 233 (D. Mass. 2010) (enforcing oral settlement agreement where plaintiff failed to identify "any material terms that were not, but should have been, the subject of agreement").

### C. No Agreement to Be Bound

The record also demonstrates that the parties never agreed to be bound by the terms that they had negotiated at the mediation. "Parties do not become contractually bound until they mutually assent to bind themselves to an agreement. Courts determine that mutual assent, not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do." Salem Laundry Co. v. New England Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280 (1st Cir. 1987) (internal citation omitted). By their words and actions in the instant case, the parties indicated that no legally binding contract had been reached.

---

[5] The court recognizes that the Government contends that the necessary approvals would have been obtained, but the undisputed fact is that the approvals had not been obtained and were not imminent at the time the Claimant indicated that he was not willing to engage in further negotiation.

During the July 14, 2011 ADR conference before the court, the Magistrate Judge characterized the status of the parties' settlement as an "almost settlement" that was "not a binding settlement[.]" (Pl. Ex. 1 at 7).  Neither of the parties took issue with that characterization.  Instead, they confirmed that the Magistrate Judge had correctly described the status of their negotiations.  (See id. at 7-8).  Additionally, it is undisputed that any agreement by the United States remained subject to final approval by officials in Washington.  The Magistrate Judge emphasized that fact at the July 14, 2011 hearing, and counsel for the plaintiff repeated it in her August 2011 emails to the Claimant's attorney.  However, no such approval was ever obtained.

The Claimant has submitted an affidavit in which he states in relevant part as follows:

> I ... heard very clearly and understood at the mediation that further things had to be worked out and that the government also needed to get approval before a settlement could be reached.  In other words, the government had a chance to consider what was discussed at the mediation and so did my family and I ....  After further thinking about the proposed settlement and discussing it with my family, I decided that I could not agree to this proposal.

(Cl. Ex. A ¶¶ 9-10).  Based on the record before this court, it was objectively reasonable for the Claimant to conclude, at the completion of the July 14, 2011 mediation session, that he still had an opportunity to consider whether he wanted to settle the matter or resume litigation.  Accordingly, there was no mutual assent to be bound to an agreement, and the parties did not enter into an enforceable settlement.

## IV.  CONCLUSION

For all the reasons detailed herein, the "United States Motion to Enforce Settlement Agreement" (Docket No. 65) is DENIED.

                                                     / s / Judith Gail Dein
                                                     Judith Gail Dein
                                                     U.S. Magistrate Judge