UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 09-11635-JGD |
| 434 MAIN STREET, TEWKSBURY, | ) | |
| MASSACHUSETTS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| RUSSELL H. CASWELL, as Trustee | ) | |
| of the Tewksbury Realty Trust, | ) | |
| | ) | |
| Claimant. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON
CLAIMANT'S MOTION FOR SUMMARY JUDGMENT**

April 25, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

This is an action for civil forfeiture by which the plaintiff, United States of

America ("United States" or "Government"), is seeking the forfeiture of real property,

including all buildings, appurtenances and improvements thereon, located at 434 Main

Street, Tewksbury, Massachusetts (the "Property").  By its complaint, the United States

claims that the Property was used to commit, or to facilitate the commission of, violations

of federal controlled substances laws, and that the Property is therefore forfeitable to the

United States pursuant to 21 U.S.C. § 881(a)(7).

Title to the Property is held by the Tewksbury Realty Trust.  The Claimant, Russell H. Caswell ("Claimant" or "Mr. Caswell"), is the Trustee and a beneficial owner of the Trust.  He is also the owner and operator of a motel, known as the Motel Caswell, which is situated on the Property.  Mr. Caswell claims that he depends on the Motel Caswell to support himself and his family, and that the forfeiture of the Property by the Government would deprive him of his present and future livelihood in violation of the Excessive Fines Clause of the Eighth Amendment.

The Government's claim that the Property is subject to forfeiture is based on investigations of drug activity at the Property that were conducted by members of the Tewksbury Police Department between 2001 and 2008, and allegedly resulted in the arrests and convictions of several individuals who visited or temporarily resided at the Property.  Pursuant to the federal forfeiture laws, and procedures and policies adopted thereunder by the Department of Justice, local law enforcement agencies that participate in investigations which lead to federal forfeitures are eligible to receive up to 80 percent of the net proceeds recovered by the forfeiture.  Mr. Caswell claims that this process, known as "equitable sharing," is what motivated the Tewksbury Police Department to cooperate with the Government in this case.  He also claims that the Government's equitable sharing program exceeds the lawful powers of the United States Congress under the Tenth Amendment because it displaces Massachusetts' own forfeiture law and encroaches upon rights that have been reserved to the Commonwealth by encouraging

local law enforcement agencies to pursue federal forfeitures that could not have been pursued under State law.

The matter is presently before the court on the "Claimant's Motion for Summary Judgment" (Docket No. 68).  By his motion, Mr. Caswell is seeking a declaration that the federal equitable sharing program "is an impermissible use of the federal spending power in violation of the Tenth Amendment."  Additionally, he is seeking a declaration that "by seeking to take Claimant's entire livelihood, this forfeiture is an excessive fine in violation of the Eighth Amendment and First Circuit precedent."

As detailed below, this court finds that the Claimant lacks standing to maintain his Tenth Amendment challenge, and is therefore not entitled to consideration of that claim on the merits.  This court also finds that it would be premature to consider the Claimant's Eighth Amendment claim until the facts underlying any forfeiture liability have been established and the court has determined whether forfeiture will be ordered and, if so, whether the harshness of the forfeiture is grossly disproportional to the gravity of the criminal offenses giving rise to the forfeiture.  Accordingly, and for all the reasons described herein, the Claimant's motion for summary judgment is DENIED.

## II.   <u>STATEMENT OF FACTS</u>[1]

Unless otherwise indicated, the following facts are not genuinely in dispute.[2]

### <u>The Subject Property</u>

The United States initiated this civil forfeiture action on September 29, 2009 by filing a Verified Complaint for Forfeiture in Rem against the Property.  (Compl. (Docket No. 1)).  The Property that is subject to the forfeiture contains a motel, known as the Motel Caswell, that was built by the Claimant's father in the 1950s.  (PR ¶ 1; CF ¶ 2).  Mr. Caswell grew up at the motel, worked there, and has owned and operated the motel with his wife for nearly 30 years.  (CF ¶ 2).

---

[1]  The facts are derived from (1) the Statement of Material Facts set forth in the Claimant's Motion for Summary Judgment (Docket No. 68) ("CF"); (2) the exhibits attached to the Claimant's Statement of Material Facts ("Cl. Ex. __"); (3) the United States' Response Pursuant to Local Rule 56.1 (Docket No. 71) ("PR"); (4) excerpts from the Deposition of Russell H. Caswell, which are set forth in Attachment 1 to United States' Response Pursuant to Local Rule 56.1 (Docket No. 74) ("Caswell Dep."); and (5) the exhibits attached to the United States' Opposition to Claimant's Motion for Summary Judgment" (Docket No. 72) ("Pl. Ex. __").

[2]  The Government has objected to nearly all of the Claimant's factual assertions on the grounds that they are "unsubstantiated and lack[] verification," and are "irrelevant and immaterial" because they have "no bearing on whether the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7)."  (See generally Docket No. 71).  However, in support of his facts, the Claimant has cited to affidavits, depositions and other documents in the record.  This is sufficient to support his motion for summary judgment.  See Fed. R. Civ. P. 56(c) (moving party may establish that a fact cannot be genuinely disputed by "citing to ... materials in the record, including depositions, documents ... affidavits ... or other materials").  This court also finds that the Claimant's facts are material and relevant to the constitutional issues raised by his motion for summary judgment.  Therefore, to the extent the Government has failed to show that the underlying record does not support the Claimant's factual assertions, or to set forth specific facts showing that there is a genuine issue for trial, this court has accepted the Claimant's facts as true.  See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial).

It is undisputed that for most of the Claimant's working life, the Motel Caswell has served as the predominant source of income for both the Claimant and his family. (Id. ¶¶ 4, 8; Cl. Ex. A ¶ 3).  Currently, Mr. Caswell, who is 68 years old, draws an annual salary of $72,000 from his operation of the motel, which he uses to support himself, his wife, and his 91-year old mother-in-law.  (CF ¶¶ 5, 9).  Although the Claimant has supplemented his income by renting out a garage he owns for $1,000 per month, and by providing welding services, he anticipates having to retire from welding in the near future due to his age and the demands of caring for his wife, who is ill.  (Id. ¶ 13).

Mr. Caswell has no pension or other retirement income apart from Social Security, and he intends to rely either on income generated by the continued operation of the Motel Caswell, or on proceeds from the sale of the Property, to support himself and his wife in their retirement.  (Id. ¶¶ 11, 12).  It is undisputed that if the Government prevails in this action, title to the Property will be transferred to the United States.  (PR ¶ 10).  Mr. Caswell claims that as a consequence, he would be deprived of his present and future livelihood.  (See CF ¶¶ 4, 11-12).

## The Instant Forfeiture Action

By its Verified Complaint, the Government is seeking forfeiture of the Property pursuant to Section 881(a)(7) of the Comprehensive Drug Abuse Prevention and Control Act of 1970.  That statute permits forfeiture of "[a]ll real property . . . which is used . . . in any manner or part, to commit, or to facilitate the commission of, a violation of [the Controlled Substances Act] punishable by more than one year's imprisonment."  21

U.S.C. § 881(a)(7).  Here, the Government claims that the Property was used to commit,

or to facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846 and/or 856."[3]

(See Compl. ¶ 3).  Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), "the

burden of proof is on the Government to establish, by a preponderance of the evidence,

that the property is subject to forfeiture[.]"  18 U.S.C. § 983(c)(1).  If the Government

meets its burden in the instant case, the Attorney General will be entitled to seize the

Property.  21 U.S.C. § 881(b).

       In support of its claim that the Property is forfeitable because it was used to

commit, or to facilitate the commission of, violations of the Controlled Substances Act,

the Government is relying on investigations of drug activity at the Property that were

conducted by members of the Tewksbury Police Department between 2001 and 2008.

(See Compl. ¶ 3 and Exs. A & B attached thereto).  Those investigations allegedly

included, but were not limited to,  surveillance of the Property by Tewksbury police

officers, controlled purchases of narcotics at the Property by confidential informants, an

investigation of a methamphetamine laboratory at the Property, and the execution of state

search warrants at the Property.  (Compl., Ex. B ¶ 4; Compl., Ex. A).  It is alleged that

those investigations led to seizures of various controlled substances and drug

---

[3]  21 U.S.C. § 841 prohibits the manufacture, distribution, or possession with intent to
distribute controlled substances, and 21 U.S.C. § 846 prohibits a conspiracy to commit a violation
of 21 U.S.C. § 841.  21 U.S.C. § 856 makes it unlawful to knowingly open, lease, rent, use, or
maintain any place, whether permanently or temporarily, for the purpose of manufacturing,
distributing, or using controlled substances.

paraphernalia from the Property, and resulted in the arrests and convictions of several individuals who visited or temporarily resided at the Property.  (Id.).

No state or local authorities have ever accused Mr. Caswell of any wrongdoing, and the Claimant is seeking to defeat the Government's forfeiture claim on the grounds that he is an innocent owner of the Property.  (See Cl. Ex. A ¶ 8; Am. Answer (Docket No. 64)).  Under CAFRA, a claimant who raises an innocent owner defense may avoid a forfeiture by proving, by a preponderance of the evidence, that he "did not know of the conduct giving rise to forfeiture; or . . .  upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."  18 U.S.C. § 983(d).  In the instant case, Mr. Caswell claims that he has taken all reasonable steps to prevent or stop criminal activity from occurring on the Property.  (CF ¶ 14).  However, the Government disputes that assertion, and intends to present evidence at trial to rebut the Claimant's claim of innocence.  (PR ¶ 14).  Thus, the issue as to whether Mr. Caswell qualifies as an innocent owner will be decided following a full trial on the merits.

### The Equitable Sharing Program

Once real property has been civilly forfeited under Section 881(a)(7), the Attorney General is authorized to "retain the property for official use or . . . transfer the property to any Federal agency or to any State or local law enforcement agency which participated directly in the seizure or forfeiture of the property[.]"  21 U.S.C. § 881(e)(1)(A).  The process of transferring forfeited property to state or local law enforcement agencies is

known as "equitable sharing."  The Department of Justice ("DOJ") has implemented

policies and procedures which govern equitable sharing.  (Pl. Ex. 1 ¶ 4).  They are

described in detail in the DOJ's <u>Guide to Equitable Sharing for State and Local Law</u>

<u>Enforcement Agencies</u> (April 2009).  (<u>Id.</u>; <u>see</u> <u>also</u> Pl. Ex. 2).  By his Tenth Amendment

claim, Mr. Caswell is challenging the constitutionality of the equitable sharing statutes

and the DOJ program implemented thereunder.  As detailed below, this court finds that

Mr. Caswell does not have standing to maintain this claim.

The equitable sharing program is implemented as part of the DOJ's asset forfeiture

program, and is aimed at promoting cooperation among federal, state, and local law

enforcement agencies.  (Pl. Ex. 2 at 1).  Equitable sharing also provides valuable

resources to state and local law enforcement agencies.  (<u>Id.</u> at Forward).  Participation in

the program by state or local law enforcement agencies is voluntary.  (Pl. Ex. 1 ¶ 7).

Even if a state or local law enforcement agency agrees to participate in the program,

however, the decision to engage in equitable sharing in connection with a particular

forfeiture is discretionary with the Attorney General.  (<u>Id.</u> ¶ 3).  Therefore, the Attorney

General is not obligated to share forfeited property in a particular case.  (<u>Id.</u>).

Where the Attorney General does elect to engage in sharing, the equitable share

allocated to the state or local law enforcement agency must bear a reasonable relationship

to the agency's degree of direct participation in the law enforcement effort that resulted in

the forfeiture.  (<u>Id.</u> ¶ 10; Pl. Ex. 2 at 1 (citing 21 U.S.C. § 881(e)(3)(A)).  However, the

federal share may not be less than 20 percent of the net proceeds of the forfeiture.  (Pl.

Ex. 2 at 12; PR ¶ 25).  This means that in the instant action, the Tewksbury Police

Department is potentially eligible to receive up to 80 percent of the net proceeds of any

forfeiture of the Property as a result of its participation in the underlying investigation.

(See Pl. Ex. 2 at 12).  Mr. Caswell claims that this could result in a direct payment of

over $1 million to the local law enforcement agency.  (CF ¶ 20).

Equitable sharing may take place only after the federal forfeiture has been

completed, the Government has taken clear title to the property, the property has been

sold or otherwise disposed of in accordance with applicable law, and a final sharing

decision has been made by the Government.  (Pl. Ex. 2 at 10).  Thus, in judicial forfeiture

cases such as the instant action, any equitable sharing can occur only after the forfeiture

has been adjudicated, and a final order of forfeiture has been entered by the federal court.

(Pl. Ex. 1 ¶ 6).  Furthermore, in order to receive an equitable share of federally forfeited

property in a particular case, the state or local law enforcement agency must submit a

Form DAG-71, Application for Transfer of Federally Forfeited Property to the federal

seizing agency within 60 days after the seizure of the property has occurred.  (Id. ¶ 9).  In

this case, the Government's forfeiture claim remains pending, no seizure has taken place,

and the Government has not received a Form DAG-71 from the Tewksbury Police

Department or any other Massachusetts law enforcement agency requesting an equitable

share of the Property.  (Id. ¶ 13).  Accordingly, it is far from clear whether equitable

sharing will occur in the instant matter.

Since the inception of the equitable sharing program, the DOJ has shared billions of dollars worth of forfeited assets with thousands of state and local law enforcement agencies.  (Pl. Ex. 2 at Foreword).  The Claimant asserts that by offering state and local law enforcement agencies opportunities to receive substantial funding in excess of amounts received through ordinary state appropriations, the program gives such agencies an incentive to pursue federal forfeiture policies and circumvent Massachusetts forfeiture law in violation of the Tenth Amendment.  (Cl. Mem. (Docket No. 68-6) at 8).  Mr. Caswell claims, and the Government disputes, that while the instant Property may qualify for forfeiture under the federal law, it would not qualify for forfeiture under Massachusetts law.  (See Cl. Reply Mem. (Docket No. 75) at 7-9; Pl. Opp. Mem. (Docket No. 72) at 15-16).[4]  However, due to Mr. Caswell's failure to establish standing with respect to

---

[4]  Because this court concludes that the Claimant lacks standing to pursue his Tenth Amendment claim, it is not necessary to provide details of Massachusetts' forfeiture law.  This court notes, however, that the relevant provisions of that law are quite similar to federal forfeiture law.  For example, but without limitation, under federal law, property is subject to forfeiture if it is "used ... in any manner or part, to commit, or to facilitate the commission of a violation of" drug crimes, while under Massachusetts law, real property is subject to forfeiture if it "is used in any manner or part, to commit or to facilitate the commission of a violation of" State controlled substances laws.  Mass. Gen. Laws ch. 94C, § 47(a)(7).  Additionally, Massachusetts law provides a defense, similar to the innocent owner defense, which precludes the forfeiture of real property "unless the owner ... knew or should have known that such ... real property was used in and for the business of unlawfully manufacturing, dispensing, or distributing controlled substances."  Mass. Gen. Laws ch. 94C, § 47(c)(3).  However, Massachusetts law further provides that "[p]roof that ... real property was used to facilitate the unlawful dispensing, manufacturing, or distribution of ... controlled substances on three or more different dates shall be prima facie evidence that the ... real property was used in and for the business of unlawfully manufacturing, dispensing, or distributing controlled substances."  Id.  There is no prima facie evidence under federal law.  Despite these similarities, Mr. Caswell contends that the standards for forfeiture are sufficiently different that the Property would not be subject to forfeiture under Massachusetts law.  (Cl. Reply Mem. at 7-9).

his Tenth Amendment claim, he is not entitled to have this court consider the merits of this claim.

### Events Leading Up to the Instant Forfeiture Action

The record shows that the Property was identified as the subject of a potential federal forfeiture by Vincent T. Kelley, a Special Agent in the asset forfeiture division of the federal Drug Enforcement Agency ("DEA").  (See Cl. Ex. C at 5-7).  Agent Kelley's primary responsibility at the DEA consists of identifying properties for forfeiture.  (Id. at 5-6).  Typically, he learns about such properties from local police departments, which contact him directly.  (Id. at 7).  On other occasions, he reads about properties in news reports, and contacts the local police department to obtain additional information.  (Id. at 7-9).  With respect to the Motel Caswell, Agent Kelley believes he first learned about the Property in 2008 by reading about it on the Internet or in the newspapers.  (Id. at 10; CF ¶ 41).  He then contacted an officer in the Tewksbury Police Department to discuss the Property.  (Cl. Ex. C at 20-21).

The record does not describe the substance of any specific conversations that Agent Kelley had with members of the Tewksbury Police Department prior to the filing of the complaint in this action.  (See id. at 64-66).  However, according to Agent Kelley, he typically informs local police departments about the DOJ's equitable sharing program, including the policy which allows such agencies to receive up to 80 percent of the net proceeds of a forfeiture.  (Id. at 65-66).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

### A.  Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  The

court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See Vineberg, 548 F.3d at 56.  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

### B.   Claimant's Tenth Amendment Challenge to Equitable Sharing

By his motion for summary judgment, the Claimant is seeking a declaration that the equitable sharing provisions of the forfeiture statutes, and the program implemented thereunder, violate the Tenth Amendment to the United States Constitution.  The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people[.]"  New York v. United States, 505 U.S. 144, 155, 112 S. Ct. 2408, 2417, 120 L. Ed. 2d 120 (1992) (internal quotations omitted).  The Claimant contends that the equitable sharing program "subverts the sovereignty reserved to Massachusetts under the Tenth Amendment and unconstitutionally co-opts state and local law enforcement agencies into the implementation of a federal regulatory program contrary to state policy."  (Cl. Reply Mem. at 6).  Because Mr. Caswell  has not demonstrated that he has standing to assert such a claim, his motion for summary judgment is denied with respect to this issue.

### General Principles of Standing

Those who seek to invoke the jurisdiction of the federal courts must satisfy Article III's threshold case or controversy requirement by demonstrating that they have "a personal stake in the outcome of the claim asserted."  Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006) (quotations and citation omitted).  Accordingly, "when a [party's] standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the [party] has shown an injury to himself that is likely to be redressed by a favorable decision.  Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation."  Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38, 96 S. Ct. 1917, 1924, 48 L. Ed. 2d 450 (1976).

"The 'irreducible constitutional minimum of standing' contains three require-ments."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)).  The Supreme Court has described those requirements as follows:

> First and foremost, there must be alleged (and ultimately proved) an injury in fact – a harm suffered by the [party asserting the claim] that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation – a fairly traceable connection between the [party's] injury and the complained-of conduct of the [opposing party].  And third, there must be redressability – a likelihood that the requested relief will redress the alleged injury.

Steel Co., 523 U.S. at 103, 118 S. Ct. at 1016-17 (internal quotations and citations omitted).  "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction

bears the burden of establishing its existence." Id. at 103-04, 118 S. Ct. at 1017 (footnote omitted).  For the reasons that follow, this court finds that Mr. Caswell has failed to make the requisite showing with respect to his Tenth Amendment claim.

## Application of Standing Requirements to the Present Case

Mr. Caswell has shown that he is faced with an imminent threat – namely, the forfeiture of his motel and the surrounding property.  However, he has not presented sufficient facts to establish a causal connection between the forfeiture of the Property and the challenged conduct.  Significantly, Mr. Caswell is not challenging the Government's authority to seize property that is forfeitable under 21 U.S.C. § 881(a)(7), the statute upon which the Government's action is based.  Instead, he is challenging the constitutionality of the equitable sharing program.  As described above, that program does not authorize the United States to pursue forfeitures or to seize forfeited property.  It merely gives the Government discretion to share forfeited property with state or local law enforcement agencies after a forfeiture has been fully adjudicated, a final order of forfeiture has been entered by the court, the Government has taken clear title to the property, and the local law enforcement agency has submitted a Form DAG-71.  (See Pl. Ex. 1 ¶¶ 6, 9; Pl. Ex. 2 at 10).  Thus, equitable sharing is separate from the forfeiture provisions that the Government is attempting to enforce against the Property, and will only occur, if at all, after the Government has prevailed on its forfeiture claim.  Accordingly, Mr. Caswell has not demonstrated a causal connection between his injury and the equitable sharing program.

Mr. Caswell nevertheless argues that the circumstances surrounding Agent Kelley's identification of the Property as a potential forfeiture target, and his contacts with the Tewksbury Police Department, demonstrate a causal connection between the equitable sharing program and the Government's forfeiture action.  (Cl. Reply Mem. at 3).  In particular, Mr. Caswell asserts that Agent Kelley was acting under the authority of the equitable sharing program when he investigated properties for forfeiture and when he spoke with members of the Tewksbury Police Department.  (Id.).  He also asserts that but for the equitable sharing program, DEA agents like Agent Kelley would not be searching for properties that might be candidates for joint forfeiture operations between federal and local law enforcement officials, Agent Kelley would not have had authority to seek assistance from local law enforcement agencies under the equitable sharing program, and "local authorities would have no motivation or lawful ability to direct resources to the pursuit of cases against property – like the Caswell family's – that would not be deemed legitimate prospects for forfeiture under Massachusetts law."  (Id.).

This court finds that Mr. Caswell's arguments rest on a number of speculative assumptions.  As an initial matter, the evidence does not show that Agent Kelley was acting under the authority of the equitable sharing program – as opposed to other provisions of the federal forfeiture laws – when he identified the Property and contacted the Tewksbury Police Department.  Nor does the record demonstrate that DEA agents would not seek assistance from local law enforcement officials, or would lack authority to seek such assistance, in the absence of the equitable sharing program.  Although equitable

sharing may give local law enforcement agencies an incentive to cooperate with the federal Government in its pursuit of civil forfeitures, the Claimant has not presented facts showing that the equitable sharing program was the sole factor, or even a significant factor, which motivated the Tewksbury Police Department to cooperate with the federal Government in this case.  Where, as here, speculative inferences are necessary to connect the injury to the Government's challenged conduct, the federal court is not empowered to act to redress the injury.  See Simon, 426 U.S. at 42-45, 96 S. Ct. at 1926-28 (no standing where it was purely speculative whether injury suffered by respondents could fairly be traced to government's action).

Additionally, the record does not support the Claimant's assertion that, in the absence of equitable sharing, local authorities would lack the "motivation or lawful ability to direct resources to the pursuit of cases against property" like the Motel Caswell. The record shows that the Property has been the subject of over 100 narcotics investigations by the Tewksbury Police Department dating back to 1994, and that the investigations upon which the Government is relying in this case date back to 2001, approximately seven years before Agent Kelley contacted local officials to discuss the Government's interest in the Property.  (See Compl., Ex. A ¶ 5; Compl., Ex. B ¶ 4).  Therefore, the record indicates that the Tewksbury Police had already devoted considerable resources toward the investigation of criminal activity at the Property by the time they were asked to participate in a federal forfeiture action or alerted to any potential for equitable sharing with respect to the federal forfeiture of the Property.

-17-

Even if Mr. Caswell were able to satisfy the first two requirements of the test for standing, he would still lack standing to maintain his Tenth Amendment claim in any event because he cannot demonstrate "a likelihood that the requested relief will redress the alleged injury." Steel Co., 523 U.S. at 103, 118 S. Ct. at 1017.  The relief requested – a declaration that the equitable sharing program violates the Tenth Amendment– would not prevent the Government from litigating its forfeiture claim under 21 U.S.C. § 881(a)(7) or have any effect on the merits of that claim.  Despite the Claimant's insistence that the equitable sharing program is the source of his harm, the Government is not attempting to enforce the equitable sharing provisions against Mr. Caswell or the Property in this matter.  As described above, any equitable sharing would only take place after the Property has been forfeited and title to the Property has passed to the United States.  Therefore, a ruling that the equitable sharing program is unconstitutional would not remedy the loss that Mr. Caswell would suffer as a result of the forfeiture of the Property.

Finally, the Claimant's reliance on the Supreme Court's decision in Bond v. United States, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011) does not alter this court's conclusion that the Claimant lacks standing to assert a Tenth Amendment claim.  In that case, the Court held that an individual, not just a state, has standing to challenge the validity of a statute on Tenth Amendment grounds, as long as the individual is seeking to vindicate his own constitutional interests.  See Bond, 131 S. Ct. at 2363-64 ("The individual, in a proper case, can assert injury from governmental action taken in excess of

the authority that federalism defines. [His] rights in this regard do not belong to a

State."). However, the Court was careful to emphasize that an individual who challenges

federal action on Tenth Amendment grounds remains subject to Article III's case and

controversy requirement. Id. at 2366. As the Court explained,

> [i]f, in connection with the claim being asserted, a litigant who
> commences suit fails to show actual or imminent harm that is
> concrete and particular, fairly traceable to the conduct complained
> of, and likely to be redressed by a favorable decision, the Federal
> Judiciary cannot hear the claim. These requirements must be
> satisfied before an individual may assert a constitutional claim; and
> in some instances, the result may be that a State is the only entity
> capable of demonstrating the requisite injury.

Id. (internal citation omitted). Because the Claimant has not made the necessary showing

in this case, he does not have standing to pursue his Tenth Amendment claim and to

support consideration of that claim on the merits.

### C.    Claimant's Eighth Amendment Challenge to Forfeiture

The Claimant argues that based on the undisputed facts in the record on summary

judgment, he is entitled to a declaration that the forfeiture of the Property would violate

the Eighth Amendment's protection against excessive fines by depriving him of his

livelihood. This court concludes that under the analytical framework prescribed by the

First Circuit in cases involving forfeitures in rem, a ruling on this issue at this stage in the

litigation would be premature.

### The Excessive Fines Clause

Forfeitures of real property under 21 U.S.C. § 881(a)(7) are "subject to the Eighth Amendment's Excessive Fines Clause."[5]  Austin v. United States, 509 U.S. 602, 622, 113 S. Ct. 2801, 2812, 125 L. Ed. 2d 488 (1993).  "A forfeiture will violate the Eighth Amendment's prohibition only if it is 'grossly disproportional to the gravity of the defendant's offense.'"  United States v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005) (quoting United States v. Bajakajian, 524 U.S. 321, 336-37, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998)).  The claimant bears the burden of proving that the forfeiture is grossly disproportional by a preponderance of the evidence.  18 U.S.C. § 983(g)(3).  If the claimant meets that burden, the court "shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution."  18 U.S.C. § 983(g)(4).

The factors to be considered by the court in determining whether a forfeiture is grossly disproportional are "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant."  Helderman, 402 F.3d at 223.  In addition, under the law of the First Circuit, "a court should . . . consider whether forfeiture would deprive the defendant of his or her livelihood."  United States v. Levesque, 546 F.3d 78, 83 (1st Cir. 2008).  See also United

---

[5]  The Excessive Fines Clause of the Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  United States v. One Parcel of Real Prop. Known as 45 Claremont St., 395 F.3d 1, 5 n. 4 (1st Cir. 2004) (quoting U.S. Const. amend. VIII).

States v. Jose, 499 F.3d 105, 113 (1st Cir. 2007) (finding it appropriate to consider as a fourth factor whether forfeiture would deprive defendant of his livelihood).  This additional factor "is separate from the three-part test for gross disproportionality[.]" Levesque, 546 F.3d at 85.  It is based on the historical concern, which underlies the Excessive Finds Clause, that "a forfeiture should not be so great as to deprive a wrongdoer of his or her livelihood[.]"  Id. at 83-84.

### Timing of the Excessive Fines Analysis

Mr. Caswell does not dispute that questions of proportionality are fact-intensive, and generally inappropriate for summary judgment.  (See Cl. Mem. at 18).  However, he contends that it is appropriate for this court to decide on summary judgment whether a forfeiture of the Property would violate the Eighth Amendment because it would deprive him of his livelihood.  (Id.).  This court disagrees.  "Before evaluating whether the size of a forfeiture is excessive, a court must first determine how much of the property will actually be forfeited."  United States v. $633,021.67 in United States Currency, 842 F. Supp. 528, 535 (N.D. Ga. 1993).  See also United States v. $11,552.73 in United States Currency, Civil Action No. 07-11759-PBS, 2009 WL 2045340, at *1 (D. Mass. June 10, 2009) (slip op.) (issue whether a civil forfeiture is excessive under the Eighth Amendment "is not decided by the court until after a finding of forfeitability"); United States v. Ziegler Bolt & Parts Co., 19 C.I.T. 13, 23-24, 1995 WL 13448, at *9 (C.I.T. 1995) ("This Court will not act on an argument sounding in the Eighth Amendment before a penalty is even assessed").  Accordingly, it would be premature to decide

whether forfeiture of the Property is excessive under the Eighth Amendment until after a fact-finder has determined whether the Property is forfeitable and whether Mr. Caswell is an innocent owner.

Moreover, under the analytical framework established by the First Circuit, the district court may not consider whether a forfeiture would deprive a claimant of his livelihood, the issue defined in Levesque and Jose, until after the court has considered the question of proportionality in accordance with the factors set forth in Heldeman.  See United States v. Fogg, 666 F.3d 13, 19 (1st Cir. 2011) (finding that district court erred by proceeding directly to the "'extra factor' delineated in *Jose* and *Levesque*" rather than "hewing to the analytical framework drawn in *Heldeman*").  See also Jose, 499 F.3d at 113 (applying first three factors for determining whether forfeiture would be grossly disproportionate to the gravity of defendant's offense before considering whether forfeiture would deprive defendant of his livelihood).  Because the facts relating to proportionality have yet to be developed, it would not be appropriate for this court to resolve the Claimant's Eighth Amendment claim at this time.[6]

While Mr. Caswell acknowledges that in some instances, the deprivation of livelihood inquiry should follow a proportionality analysis, he argues that the First Circuit

---

[6]  This court's decision not to reach the constitutional issue at this time is consistent with the "Supreme Court's command mandating avoidance of unnecessary constitutional rulings."  See United States v. Vilches-Navarrette, 523 F.3d 1, 10 (1st Cir. 2008).

in <u>Fogg</u> did not establish a categorical rule.  (Cl. Reply Mem. at 17 n. 17).  Specifically,

the Claimant contends that

> *Fogg* involved a forfeiture of money not, like here, a forfeiture of
> real property.  In currency forfeitures, like the one in *Fogg*, a court,
> after the jury verdict and after considering proportionality, including
> the claimant's level of culpability, might ultimately determine that
> only a portion of the forfeiture sought by the government should be
> sustained.  Therefore, it makes sense to determine whether a
> forfeiture would deprive someone of their livelihood after a court
> determines how much cash the government will be allowed forfeit.
> Here, however, because of the nature of the property (real estate
> along with buildings), the forfeiture is all-or-nothing.  Mr. Caswell
> stands to lose his entire parcel of property, which ... will deprive him
> of his ability to earn a living.

(<u>Id.</u>).  Thus, the Claimant urges the court to find that the nature of the property at issue in

this case justifies a ruling on the excessiveness of the forfeiture at this stage in the

litigation.  Specifically, he argues that since the Government is seeking forfeiture of the

motel, it is clear that he will lose his livelihood and there is no need for a proportionality

assessment.  This argument fails as a matter of law and fact.

The Claimant's argument is based on the faulty premise that the proportionality

assessment is inapplicable in cases involving forfeitures of real property.  Pursuant to 18

U.S.C. § 983(g)(4), "[i]f the court finds that the forfeiture is grossly disproportional to the

offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the

Excessive Fines Clause of the Eighth Amendment of the Constitution."  Nothing in that

statute limits this obligation to forfeitures involving currency.  Moreover, the relevant

case law demonstrates that the proportionality analysis applies to forfeitures of real

-23-

property, and may result in the reduction or elimination of the forfeiture in such cases.

See, e.g., United States v. One Parcel of Real Prop. Known as 45 Claremont St., 395 F.3d

1, 6 (1st Cir. 2004) (determining whether forfeiture of claimant's three-family dwelling

was "grossly disproportional to the gravity of the crime"); Von Hofe v. United States, 492

F.3d 175, 188-91 (2d Cir. 2007) (concluding that Excessive Fines Clause precluded

forfeiture of claimant's one-half interest in her home, and remanding matter to district

court to determine "whether and to what extent to reduce the amount to be forfeited" by

her).  In addition, as Mr. Caswell has argued, he may sell the Property and use the

proceeds from the sale of the Property to live on during his retirement.  (CF ¶ 12).

Therefore, even if the Property is forfeited and ordered sold, there may be an allocation

of funds which would preclude any forfeiture from being excessive.  For all these

reasons, Mr. Caswell's motion for summary judgment on his excessive fine claim is

denied as premature.

## IV.  CONCLUSION

For all the reasons detailed herein, the "Claimant's Motion for Summary

Judgment" (Docket No. 68) is DENIED.

      / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge