**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff, )<br>          )<br>  v. )<br>           )<br>434 MAIN STREET, )<br>TEWKSBURY, )<br>MASSACHUSETTS, )<br>    Defendant, )<br>_____)<br>TEWKSBURY REALTY TRUST, )<br>    Claimant. )<br>_____) | Civil Action No. 09-11635-JGD |

**UNITED STATES' TRIAL BRIEF**

  The United States submits this trial brief in advance of the trial in this matter, which is scheduled to commence on November 5, 2012. This brief sets forth the statutory basis for the forfeiture of the real property located at 434 Main Street, Tewksbury, Massachusetts, including all buildings, appurtenances and improvements thereon, as described in more detail in a deed recorded in Book 2056, Page 118 of the Middlesex North County Registry of Deeds (hereinafter, the "Defendant Property") and a summary of the United States' expected evidence.

**I. APPLICABLE LAW**

  Title 21, United States Code, Section 841(a)(1) ("Section 841") makes it unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Title 21, United States Code, Section 846 ("Section 846") makes it unlawful for any person to attempt or conspire to commit a violation of Section 841. Title 21, United States Code, Section 881(a)(7) ("Section 881") makes forfeitable any real property used to facilitate a violation of Section 841 and/or 846.

1

**A.     Forfeitability**

To prevail in a forfeiture action under Section 881, the United States must establish, by a preponderance of the evidence, that the Defendant Property was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of Sections 841, 846 and/or 856.  Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983(c)(1).  Where, as here, the government's theory of forfeiture is that the Defendant Property was used to facilitate a crime (specifically, criminal drug activity), the government must establish a "substantial connection" between the Defendant Property and the offense.  18 U.S.C. § 983(c)(3); *United States v. One Parcel of Real Prop.*, 900 F.2d 470, 474 (1st Cir. 1990).

The "substantial connection" test requires only that the property was used, or intended to be used, to commit a crime, or must facilitate the commission of a crime.  *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir. 1990).[1]  Establishing a pattern of activity is one method by which the government can demonstrate that substantial connection.  *See, e.g., United States v. Real Prop. Located at 3234 Washington Ave., Minneapolis, Minnesota*, 480 F.3d 841, 843 (8th Cir. 2007) (although ultimately reversing summary judgment in favor of government on other grounds, court notes that evidence of widespread illegal drug activity at defendant property, if credited by the trier of fact, would satisfy the government's burden to prove a "substantial connection"); *United States v. 3402 53rd St. West, Bradenton, Florida*, 178 Fed.Appx. 946, 947-48 (11th Cir. 2006) (circumstantial evidence, including testimony that multiple drug sales had

---

[1]  Section 983(c)(3) was enacted as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000).  Even prior to CAFRA, most courts, including the First Circuit, applied the "substantial connection" test to forfeitures of facilitating property.  *See, e.g., One Parcel of Real Prop.*, 900 F.2d at 474; *United States v. One 1986 Ford Pickup*, 56 F.3d 1181 (9th Cir. 1995); *United States v. Borromeo*, 995 F.2d 23 (4th Cir. 1993); *United States v. Real Prop. & Residence at 3097 S.W. 111th Ave.*, 921 F.2d 1551 (11th Cir. 1991).

occurred at forfeited residence, established a substantial connection); *United States v. All That Lot . . . Located at 31 Endless St.*, 1993 WL 441804, at *2 (4th Cir. Sept. 27, 1993) (evidence that included 21 drug transactions on defendant property helped to establish "substantial connection"); *United States v. 475 Cottage Dr.*, 433 F.Supp.2d 647, 655-656 (M.D.N.C. 2006) (evidence of over a decade of drug activity at defendant property helped to establish a substantial connection); *United States v. One Parcel of Real Prop. with Bldgs...Known as 352 Northup St.*, 40 F.Supp.2d 74, 79-80 (D.R.I. 1999) (court looked at, among other things, a history of behavior aimed at concealing financial dealings when determining whether defendant property was linked to drug proceeds); *United States v. 8848 S. Commercial St.*, 757 F.Supp. 871, 879 (multiple drug-related arrests and seizures at defendant property allowed government to satisfy its burden).

  B. **Innocent Owner Defense**

Once the government establishes forfeitability of the Defendant Property, the burden shifts to the Claimant[2] to demonstrate, by a preponderance of the evidence, that it is an innocent owner of the Defendant Property to avoid forfeiture of the Defendant Property. CAFRA, 18 U.S.C. §§ 983(d)(1) and (d)(6). An "innocent owner" is an owner[3] who (i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property subject to forfeiture. 18 U.S.C. § 983(d)(2)(A).

---

[2] The "Claimant" in this case is the Tewksbury Realty Trust, which is represented by its Trustee, Russell Caswell. Docket No. 10. The beneficiaries of the Tewksbury Realty Trust are Russell Caswell and Patricia Caswell. *Id.*

[3] An "owner" for purposes of the innocent owner statute "means a person with an ownership interest in the specific property sought to be forfeited" and does not include "a nominee who exercises no dominion or control over the property." 18 U.S.C. §§ 983(d)(6)(A) and (B)(iii).

The "knowledge" element of the innocent owner defense can be established by demonstrating that Claimant was willfully blind to the criminal activity at the Defendant Property.[4] *See United States v. Collado*, 348 F.3d 323, 327 (2d Cir. 2003) (property owner who is willfully blind to the distribution of illegal drugs on her property by her son does not qualify as innocent owner); *U.S. v. 874 Gartel Dr.*, 79 F.3d 918, 924 (9th Cir. 1996); *United States v. One Parcel of Real Prop., Located at 755 Forest Rd., Northford, Connecticut*, 985 F.2d 70, 72 (2d Cir. 1993) ("However, where an owner has engaged in 'willful blindness' as to activities occurring on her property, her ignorance will not entitle her to avoid forfeiture."); *United States v. Real Prop. Located at 1044 Cherry Dr., Township of Elderon*, 2010 WL 519861 at *3 (W.D. Wis. Feb. 9, 2010) (stating that knowledge includes willful blindness or a failure to investigate because one is afraid of what such an inquiry would yield); *United States v. $11,552.73 in United States Currency*, 07-11759-PBS, 2009 WL 2045340 at *6 (D.Mass. June 10, 2009); *United States v. Funds Seized From Account No. 20548408 at Baybank, N.A.*, 1995 WL 381659, at *6 (D.Mass. June 16, 1995) ("In the context of an 'innocent owner' defense, willful blindness of structuring activity is tantamount to knowledge.").

Willful blindness can be established by presenting evidence of a history and/or pattern of conduct (not limited to that which would give rise to forfeiture) demonstrating that Claimant knew or should have known about (or was willfully blind to) the criminal conduct giving rise to forfeiture. *See, e.g., Collado*, 348 F.3d at 327-28 (upholding grant of summary judgment in favor of government after finding that claimant was willfully blind; court found that claimant

---

[4] The innocent owner defense to forfeiture predates CAFRA, and, in fact, the knowledge prong of Section 983(d)(2)(A)(i) is the same as it was pre-CAFRA. Accordingly, pre-CAFRA caselaw defining "knowledge" for purposes of the innocent owner defense is applicable to the statute. *See United States v. One 1988 Checolet 410 Turbo Prop Aircraft*, 282 F.Supp.2d 1379, 1382-83 (S.D. Fla. Sept. 2, 2003); *2001 Honda Accord*, 245 F.Supp.2d 602, 611.

was willfully blind based on the history and amount of criminal drug activity conducted at or near the defendant property); *United States v. Prop. Identified as 1813 15th St., N.W.*, 956 F.Supp. 1029, 1036 (D.C. Cir. 1997) (evidence of knowledge of claimant included multiple drug raids on the defendant property). *See also 31 Endless St.*, 1993 WL 441804, at *2-3 (appellate court affirmed district court's finding that claimants had knowledge of criminal activity at defendant property based, at least in part, on longevity of pattern of drug activity). Thus, to prove that Claimant is an innocent owner of the Defendant Property, Claimant must establish that it did not know of, or was not willfully blind to, the drug-related conduct giving rise to forfeiture of the Defendant Property.

A claimant who was willfully blind to the criminal use of its property cannot establish an innocent owner defense based on lack of knowledge. *See, e.g., United States v. Premises and Real Prop. at 731 Gabbey Rd., Pembroke, New York*, 58 F.3d 841, 844-845 (2d Cir. 1995) (mother who knew of son's prior drug arrest and had access to areas of property where marijuana and drug paraphernalia were stored was willfully blind to marijuana cultivation at her property); *45 Claremont St.*, 395 F.3d at 4 (claimant should have known about the illegal drug activity where drugs, scale, wrappers and cash were openly found in kitchen and claimant could not get to her bathroom without going through kitchen); *755 Forest Rd.*, 985 F.2d at 72-73 (claimant was willfully blind to husband's illegal drug activity when drugs and instruments used to deal drugs were discovered throughout her bedroom); *United States v. Milbrand and 731 Gabbey Rd.*, 58 F.3d 841, 844-845 (claimant was willfully blind where drugs were hidden in drawers and cabinets of rooms that claimant routinely used). Where an owner has engaged in "willful blindness" as to activities occurring on a defendant property, the owner's ignorance will not

entitle it to avoid forfeiture. *755 Forest Rd.*, 985 F.2d at 72 (citing to *United States v. Leasehold Interest in 121 Nostrand Ave. Apt. 1C,* 760 F.Supp. 1015, 1031-32 (E.D.N.Y.1991)).

  A claimant with knowledge of criminal drug activity giving rise to forfeiture of a defendant property may still prevail on an innocent owner defense *only* if the claimant can demonstrate that it "did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A)(ii). *See United States v. Real Prop. in Santa Paula*, 763 F.Supp.2d 1175, 1193 (C.D. Cal. 2011) (applying pre-CAFRA caselaw to Section 983(d)(2) and holding that a parent who knew of, or was willfully blind to, an adult child's use of his property to cultivate marijuana did not satisfy the "all reasonable steps" test when he failed to inspect his property to learn the full extent of the cultivation and failed to contact law enforcement); *United States v. $20,560, More or Less, in U.S. Currency*, 2010 WL 3702590 at *3 (S.D. W. Va. Sept. 13, 2010) (court rejected wife's innocent owner claim to currency her husband was using to conduct drug business because it was "very difficult to believe" that she did not know what he was doing and offered no evidence of having taken any steps to stop it).

  To establish lack of consent to the criminal drug activity, a claimant must demonstrate that it did all that reasonably could be expected to prevent the illegal activity once the claimant learned of the illicit use of the property. *See United States v. 16328 South 43rd E. Ave.*, 275 F.3d 1281, 1286 (10th Cir. 2002) (court holds that woman who failed to call the police, evict her son who was growing marijuana on her property, or otherwise more thoroughly investigate his activities could not establish lack of consent); *United States v. All Right, Title and Interest…785 St. Nicholas Ave.*, 983 F.2d 396, 404 (2d 1993) (even though neighborhood may be infested with drug activity, owners of rental property must take reasonable steps under the circumstances to

prevent property from facilitating drug trafficking). It is not, however, sufficient to show that the claimant took *some* reasonable steps. Rather, "[u]nless an owner with knowledge can prove every action, reasonable under the circumstances, was taken to curtail the drug-related activity, consent is inferred." *United States v. Certain Real Prop. and Premises Known as 418 57th Street, Brooklyn, NY*, 922 F.2d 129, 132 (2d Cir. 1990).

In particular, courts have held that it is not sufficient for a claimant who is a landlord, motel owner, or other person who leases its premises to third parties, to show that it had called the police when it learned that someone was committing a criminal offense on the defendant property. To the contrary, such claimants are not only required to call the police, but to institute procedures (*e.g.*, installing security devices, hiring a security guard, restricting access to the property to registered motel guests or tenants, restricting occupancy to registered guests, restricting access to non-public areas, evicting criminals) that are likely to be effective in preventing continued criminal activity. *See United States v. Lot Numbered One of the Lavaland Complex*, 256 F.3d 949, 955-56 (10th Cir. 2001); *United States v. Prop. Identified as 1813 15th St., N.W.*, 956 F.Supp. 1029, 1037 (D.D.C. 1997).

## II.   EVIDENCE THE UNITED STATES EXPECTS TO PRESENT AT TRIAL

### A.   Evidence Concerning the Forfeitability of the Defendant Property

The United States expects to present evidence, including testimony and documents, of drug-related incidents, summarized below, that occurred at the Defendant Property from 1994 through 2008 (hereinafter referred to as the "DP Incidents"). The DP Incidents include:

1. In September 1994, a search of a room at the Defendant Property by the Tewksbury Police Department ("TPD") and subsequent arrest at the Defendant Property of an individual for possession of a Class B substance with intent to distribute.

2.  In July 1997, an arrest by TPD of an individual in the parking lot of the Defendant Property for possession of a Class B substance. During the same month, two individuals who were distributing heroin to multiple rooms at the Defendant Property, including an undercover purchase from a room at the Defendant Property that was rented by the TPD; the individuals who were distributing the narcotics were later arrested by the TPD down the street from the Defendant Property.

3.  In August 1997, an arrest of two individuals in the parking lot of the Defendant Property; the individuals were placed in marked police vehicles subsequent to their arrest. The individuals were arrested after TPD officers set up surveillance at the Defendant Property and observed the individuals distributing heroin to multiple rooms at the Defendant Property.

4.  In February 2001, an arrest on the Defendant Property by TPD of two individuals for distribution of controlled substances. Prior to the arrest, the TPD set up surveillance of the Defendant Property's parking lot from one of the rooms on the Defendant Property. After the arrest, the individuals were placed in police cruisers that arrived at the Defendant Property.

5.  In March 2001, a search of a room at the Defendant Property and a subsequent arrest of two individuals for the sale and distribution of heroin.

6.  In September 2003, arrests of two individuals at the Defendant Property for distribution of controlled substances. The arrests were subsequent to TPD surveillance from the parking lot of the Defendant Property.

7.  In February 2004, a search of a room at the Defendant Property by the TPD and subsequent arrest at the Defendant Property of two individuals for distribution of controlled substances out of a room at the Defendant Property.

8.  In November 2004, a search of a room on the Defendant Property by TPD and subsequent arrests at the Defendant Property of individuals for distribution of controlled substances. Just prior to the search and arrests, the TPD (a) reviewed the room register to confirm the identity of the occupants of the room to be searched, and (b) stopped one of the individuals in the parking lot of the Defendant Property.

9.  In October 2005, an arrest of an individual for passing counterfeit money that led to the discovery of a methamphetamine laboratory in one of the rooms on the

> Defendant Property. The individual who was operating the methamphetamine laboratory was arrested and a search of the room in which the laboratory was located was executed.
>
> 10. In February 2006, TPD officers conducted a traffic stop in the parking lot of the Defendant Property after the occupants of the vehicle were suspected of conducting a drug transaction. The individuals then fled from the TPD by running into a room on the Defendant Property and subsequently escaping through a window in the room, which caused the TPD to pursue the suspects.
>
> 11. In December 2007, a cleaning lady who worked on the Defendant Property found a deceased man in one of the rooms on the Defendant Property. TPD was subsequently notified and found a man who died as a result of a heroin overdose.
>
> 12. In October 2008, an arrest of an individual in one of the rooms on the Defendant Property. Drugs and drug paraphernalia were found on the individual's person and in the room. The arrest was made subsequent to a call placed to the TPD by an employee who worked at the Defendant Property.
>
> 13. In November 2008, multiple controlled purchases of illegal narcotics in a room on the Defendant Property, which led to the arrests of individuals who were residents of the Defendant Property and who were trafficking controlled substances at the Defendant Property.
>
> 14. In November 2008, a controlled purchase of illegal narcotics in a room on the Defendant Property, which led to the arrest of an individual in the room for cocaine distribution and possession with intent to distribute cocaine.
>
> 15. In November 2008, an arrest of two individuals who were residing in a room on the Defendant Property for possession and possession with intent to distribute controlled substances.
>
> **B.**   **Evidence to Rebut Claimant's Innocent Owner Defense**

While it remains Claimant's burden to demonstrate by a preponderance of the evidence that it is an innocent owner (*i.e.*, it is not the government's burden to demonstrate that Claimant

is not an innocent owner),[5] the United States expects to present evidence to rebut the assertion that the Claimant is an innocent owner of the Defendant Property on the grounds that (1) the Claimant either knew, or should have known, that the Defendant Property was used for illicit drug activity from at least 1994 (*i.e.*, the date of the earliest DP Incidents), and (2) Claimant failed to take every action, reasonable under the circumstances, to deter the criminal drug activity at or in the Defendant Property. The government anticipates that such evidence would include:

1. Testimony, including from TPD officers, that the Defendant Property had a reputation for being a haven for criminal drug activity.

2. Testimony, including from TPD officers, to establish a pattern or history of criminal drug activity occurring at or in the Defendant Property, including the discovery and subsequent clean-up (paid for by Claimant) of a methamphetamine lab located at the Defendant Property in October 2005.

3. Testimony that TPD officers have interacted with the Claimant and/or Claimant's employees[6] while conducting their law enforcement duties. For example, the United States expects to present evidence of a meeting in 2007 that the TPD coordinated with area motel and hotel owners to discuss criminal activity in Tewksbury and steps that lodging owners could take to help detect and prevent such criminal activity.

4. Testimony and documents establishing that the criminal drug activity at the Defendant Property received coverage from the media, including from the local newspapers and from a local cable station. For example, the government expects to present testimony from a former news reporter who shadowed TPD officers and observed a drug arrest at the Defendant Property, which was subsequently broadcast on the reporter's cable news program.

5. Evidence that the Trustee and beneficiaries of the Claimant live in close proximity to the Defendant Property and that the Trustee of the Claimant (*i.e.*, Russell Caswell) also works at the Defendant Property, and thus, knew or should have known that criminal activity occurred at the Defendant Property.

---

[5] *See United States v. Real Prop. & Improvements at 6810 Ave. L, Houston, Texas*, 2012WL2785890 at *8 (S.D. Tex. July 6, 2012).

[6] The knowledge of the Claimant's employees is imputed to Claimant. *See United States v. One Parcel of Land Locate at 7326 Highway 45 North…Oneida County, Wisconsin*, 965 F.2d 311, 316 (7th Cir. 1992); *United States v. 141st St. Corp.*, 911 F.2d 870, 876 (2d Cir. 1990); *United States v. Nissan Van 1987 Vin JN8HD16Y8HWO14378*, 45 F.3d 438, 1994 WL 711941 at *3 (9th Cir. Dec. 20, 1994).

      6. Testimony that Claimant did not do what he reasonably could be expected to do under the circumstances to terminate the use of the Defendant Property as facilitating property for criminal drug activity. For example, the government expects to rebut Claimant's innocent owner defense with testimony concerning reasonable measures that Claimant could have taken to curb the illicit drug activity on and in the Defendant Property. The United States also anticipates that it will present testimony that the Claimant did not even meet the requirements of state law provisions covering lodging, which require the place of lodging to record certain information from its guests/occupants. Evidence that Claimant and/or its agents were aware of drug paraphernalia found in the rooms on the Defendant Property is also expected to be presented.

Finally, the United States notes that the parties will file a Joint Exhibit List and will provide the Court with copies of the listed exhibits prior to trial.

## III.    PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW[7]

Pursuant to the Court's Order of May 30, 2012, the United States submits the following proposed findings of fact and conclusions of law.

### A. Findings of Fact

1. The defendant property in this civil forfeiture matter is the real property located at 434 Main Street, Tewksbury, Massachusetts, including all buildings, appurtenances and improvements thereon ("Defendant Property").

2. Title to the Defendant Property is held by the Tewksbury Realty Trust.

3. The Claimant in this case is the Tewksbury Realty Trust, which is represented by its Trustee, Russell H. Caswell ("Caswell"), and the beneficiaries of the Tewksbury Realty Trust are Caswell and his wife, Patricia Caswell ("Patricia").

4. Located on the Defendant Property is a 56-room motel called the Motel Caswell.

5. Caswell and Patricia have owned the Motel Caswell since 1984.

6. Caswell and Patricia live at 442 Main Street, in Tewksbury, Massachusetts, adjacent to the Defendant Property.

---

[7] The Proposed Findings of Fact will be further developed at trial, and other facts not specifically listed here may also come to light. The United States, therefore, respectfully requests that the Court allow for the filing of Supplemental Proposed Findings of Fact and Conclusions of Law after the conclusion of trial and after the government has had the opportunity to obtain and review trial testimony transcripts.

7. Caswell and Patricia have resided at 442 Main Street in Tewksbury, Massachusetts since at least 1994.

8. Caswell oversees the Motel Caswell and actively participates in the facility's management and daily operation.

9. On September 29, 2009, the United States filed a Verified Complaint for Forfeiture *in Rem* (the "Complaint") against the Defendant Property.

10. The Complaint alleges that the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because it was used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846 and/or 856.

11. The Court finds that drug-related incidents listed in Section II.A above occurred and gave rise to forfeitability of the Defendant Property. The Defendant Property, therefore, is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) because it was used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, a violation of 21 U.S.C. §§ 841, 846 and/or 856.

12. Upon learning of the criminal drug activity that gave rise to forfeiture of the Defendant Property, Caswell did not do what could reasonably be expected to terminate such use of the Defendant Property.

13. The Claimant is not an innocent owner under 18 U.S.C. § 983(d)(2) because Caswell either had knowledge of or was willfully blind to the criminal drug activity that occurred at the Defendant Property beginning at least in 1994 through 2008.

### B. Conclusions of Law

1. Under 21 U.S.C. § 881(a)(7), all real property which is used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, a violation of the Controlled Substances Act under 21 U.S.C. § 801, *et seq.* shall be subject to forfeiture to the United States and no property right shall exist in them.

2. For the Defendant Property to be forfeitable under 21 U.S.C. § 881(a)(7), the United States must establish by a preponderance of the evidence that: (1) there was a violation of 21 U.S.C. § 801, *et seq.* which was punishable by more than one year's imprisonment; (2) the real property, including any appurtenances or improvements thereon, was used or intended to be used in any manner or part to commit or to facilitate the commission of the violation; (3) there was a substantial connection between the property to be forfeited and the violation. *See* 18 U.S.C. § 983(c)(3).

3. The United States has the burden of establishing that the Defendant Property is forfeitable by a preponderance of the evidence. 18 U.S.C. § 983(c)(1).

4.      Once the United States establishes that the Defendant Property is subject to forfeiture under 21 U.S.C. § 881(a)(7), Claimant may raise the "innocent owner" defense under 18 U.S.C. § 983(d).

5.      Under 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."

6.      To establish that it is an innocent owner under 18 U.S.C. § 983(d)(2), Claimant must show that it either: (1) had no knowledge of the criminal activity; or (2) upon learning of the conduct giving rise the forfeiture, did all that could reasonably be expected to terminate such use of the property.

7.      Willful blindness to illegal activity is equivalent to knowledge of the illegal activity under 18 U.S.C. § 983(d)(2)(A)(i), and precludes Claimant's "innocent owner" defense. *See United States v. Collado*, 348 F.3d 323, 327 (2d Cir. 2003) (property owner who is willfully blind to the distribution of illegal drugs on her property by her son does not qualify as innocent owner); *United States v. 874 Gartel Dr.*, 79 F.3d 918, 924 (9th Cir. 1996); *755 Forest Rd.*, 985 F.2d at 72 ("However, where an owner has engaged in 'willful blindness' as to activities occurring on her property, her ignorance will not entitle her to avoid forfeiture."); *United States v. Real Prop. Located at 1044 Cherry Dr., Township of Elderon*, 2010 WL 519861 at *3 (W.D. Wis. Feb. 9, 2010) (stating that knowledge includes willful blindness or a failure to investigate because one is afraid of what such an inquiry would yield); *United States v. $11,552.73 in United States Currency*, 07-11759-PBS, 2009 WL 2045340 at *6 (D.Mass. June 10, 2009); *United States v. Funds Seized From Account No. 20548408 at Baybank, N.A.*, 1995 WL 381659, at *6 (D.Mass. June 16, 1995) ("In the context of an 'innocent owner' defense, willful blindness of structuring activity is tantamount to knowledge.").

8.      Under 18 U.S.C. § 983(d)(2)(A)(ii), if an individual who claims to have no actual knowledge of the illegal activity giving rise to the forfeiture becomes aware of the criminal conduct, to qualify as an innocent owner it must establish by a preponderance of the evidence that upon learning of the conduct giving rise to the forfeiture she took all possible steps to prevent the activity.

9.      Claimant has the burden of proving that it is an innocent owner under 18 U.S.C. § 983(d)(2) by a preponderance of the evidence.  18 U.S.C. § 983(d)(1).

10.     The United States has met its burden to prove by a preponderance of the evidence that the Defendant Property is forfeitable under 21 U.S.C. § 881(a)(7).

11.     The evidence presented at trial established by a preponderance of the evidence the first element of 21 U.S.C. § 881(a)(7): that there was a violation of the Controlled Substances Act.

12. The United States needs only to establish by a preponderance of the evidence a single felony violation of the Controlled Substances Act; the evidence at trial established multiple felony violations of the Controlled Substances Act at or in the Defendant Property.

13. The United States established by a preponderance of the evidence the second element of 21 U.S.C. § 881(a)(7): that the defendant property was used in any manner or part to commit or to facilitate the commission of the violation.

14. The broad plain language of 21 U.S.C. § 881(a)(7), "any manner or part" indicates Congress intended the statute to be broadly interpreted. *See United States v. Littlefield*, 821 F.2d 1365, 1367 (9th Cir.1987) ("By specifying that property is subject to forfeiture if it was used 'in any manner or part' to commit or facilitate a drug offense, Congress plainly provided for forfeiture of property even when only a portion of it was used for the prohibited purposes.").

15. The United States has established by a preponderance of the evidence the third element of 21 U.S.C. § 881(a)(7): that there was a substantial connection between the property to be forfeited and the criminal drug violations.

16. Claimant has failed to show by a preponderance of the evidence that it is an "innocent owner" under 18 U.S.C. 983(d) (2).

17. Claimant had actual knowledge of, or at a minimum was willfully blind to, the illegal activities giving rise to forfeiture of the Defendant Property. *See United States v. One 1988 Checolet 410 Turbo Prop Aircraft, Dominican Republic Registration Tail No. H1698CT*, 282 F.Supp.2d 1379, 1383 (S.D.Fla.2003) (" 'actual knowledge' may be proven by inference from circumstantial evidence suggesting a high probability of a property's involvement with drug trafficking, and that a property owner may not 'turn a blind eye' toward such evidence and still claim 'innocent owner' status under CAFRA").

18. Upon learning of the criminal drug activity that gave rise to forfeiture of the Defendant Property, Caswell did not do all that reasonably could be expected under the circumstances to terminate such use of the Defendant Property pursuant to 18 U.S.C. 983(d)(2).

19. All right, title, and interest in the Defendant Property is forfeited to the United States of America under 21 U.S.C. § 881(a)(7).

20.     Forfeiture of the Defendant Property does not violate the Excessive Fines Clause of the Eighth Amendment of the Constitution.

                                               Respectfully submitted,

                                               UNITED STATES OF AMERICA,

                                               By its attorney,
                                               CARMEN M. ORTIZ
                                               United States Attorney

                                               /s/ Veronica Lei
                                               SONYA RAO
                                               ANTON GIEDT
                                               VERONICA LEI
                                               Assistant United States Attorneys
                                               1 Courthouse Way
                                               Suite 9200
                                               Boston, MA 02210

Dated:  October 30, 2012                    (617) 748-3100


## CERTIFICATE OF SERVICE

     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                             /s/  Sonya Rao
                                             SONYA RAO
Dated:  October 30, 2012                    Assistant U. S. Attorney