UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
        PLAINTIFF,                   )
                                    )        CIVIL ACTION
VS.                                 )        NO. 09-11635-JGD
                                    )
434 MAIN STREET, TEWKSBURY,         )
MASSACHUSETTS                       )
        DEFENDANT.                   )
_____)
                                    )
RUSSELL H. CASWELL, Trustee of      )
the Tewksbury Realty Trust,         )
        CLAIMANT.                    )
_____)

## CLAIMANT'S TRIAL BRIEF

**SCHLOSSBERG | LLC**
George W. Skogstrom, Jr. (BBO #552725)
Tiffany L. Pawson (BBO # 672713)
35 Braintree Hill Office Park, Suite 204
Braintree, MA 02184
Tel:  (781) 848 – 5028
Fax: (781) 848 – 5096
Email: gskogstrom@sabusinesslaw.com;
        tpawson@sabusinesslaw.com


*Local Counsel for Claimant*

**INSTITUTE FOR JUSTICE**
Scott G. Bullock, *pro hac vice*
Lawrence G. Salzman, *pro hac vice*
Darpana M. Sheth, *pro hac vice*
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel:  (703) 682 – 9320
Fax:  (703) 682 – 9321
Email: sbullock@ij.org; lsalzman@ij.org;
        dsheth@ij.org


*Attorneys for Claimant*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

PROPOSED FINDINGS OF FACT ..........................................................................2

    I.  THE MOTEL CASWELL:  A MOM-AND-POP MOTEL IN TEWKSBURY, MASSACHUSETTS ..2

    II.  THE GOVERNMENT ATTEMPTS TO TAKE THE MOTEL THROUGH CIVIL FORFEITURE ......3

    III. HISTORY REPEATING:  THE EXTENSIVE LEGISLATIVE HISTORY OF CAFRA .................4

        A.  CAFRA Codifies the "Substantial Connection" Requirement ..............................5

        B.  CAFRA's Innocent Owner Defense Offers Meaningful Protection......................6

REQUESTED RULINGS OF LAW..........................................................................8

    I.  THIS COURT SHOULD HOLD THAT THE MOTEL CASWELL IS NOT SUBJECT TO
        FORFEITURE BECAUSE THERE IS NO SUBSTANTIAL CONNECTION BETWEEN THE
        MOTEL AND DRUG CRIMES COMMITTED BY TRANSIENT THIRD PARTIES ......................9

        A.  In Requiring A Substantial Connection, CAFRA Plainly Requires The
            Government To Show A Significantly Greater Connection Than The
            Mere Fact That Various Drug Crimes Committed By Third Parties Occurred
            At The Motel.......................................................................................10

        B.  The Legislative History Is Unmistakable:  "Substantial Connection" Means
            Essential, Or Indispensable—Something Significantly Greater Than A Mere
            Incidental or Fortuitous Connection ..................................................13

    II.  THIS COURT SHOULD HOLD THAT MR. CASWELL IS AN INNOCENT OWNER UNDER 18
        U.S.C. § 983(d) ...................................................................................15

        A.  Mr. Caswell Did Not Know of the Drug Crimes Giving Rise to Forfeiture ........16

        B.  Mr. Caswell Took Reasonable Steps to Stop the Unauthorized Use of His
            Property for Drug Crimes ..................................................................18

CONCLUSION....................................................................................................20

Pursuant to Local Rule 16.5(f) and this Court's May 30, 2012 Order Setting Case for Trial [Docket No. 81], Claimant Russell Caswell respectfully submits this Trial Brief setting forth proposed findings of fact and requested rulings of law.

## PRELIMINARY STATEMENT

In a case of history repeating itself, this trial will determine whether federal civil forfeiture laws permit the United States Government to take Mr. Caswell's family-run motel solely because a small number of transient guests or their visitors surreptitiously engaged in drug-related activity on the motel premises.  Congress prohibited exactly this kind of forfeiture more than a decade ago when it passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA").

The leading example of forfeiture abuse motivating Congress to pass this reform statute was the case of the Red Carpet Inn.[1]  In 1998, a zealous United States Attorney filed a civil forfeiture complaint against the Red Carpet Inn, a budget motel in Houston.  There were no allegations that the motel owners participated in any of the crimes.  Indeed, on occasion, motel personnel had called the police to the establishment to report suspicious behavior by some of its overnight guests.  Nevertheless, the United States claimed that the motel should be forfeited because the owner knew about the level of drug crime that had occurred on the property and allegedly failed to take sufficient measures to prevent or stop its guests from engaging in criminal behavior.  Outraged by the "absurdity and danger of this government forfeiture theory against legitimate business[,]"[2] both houses of Congress overwhelmingly passed CAFRA with the express purpose of protecting the property rights of innocent owners, such as the owner of the Red Carpet Inn.

---

[1]  Stephen Labaton, *House Passes Bill Making It Harder to Seize Property*, N.Y. TIMES, June 25, 1999, at A1, *available at* http://www.nytimes.com/1999/06/25/us/house-passes-bill-making-it-harder-to-seize-property.htm.
[2]  Civil Asset Forfeiture Reform Act, H.R. Rep.No. 106-192, at 10 (June 18, 1999).

Yet, more than a decade after these reforms were put in place, Mr. Caswell faces the same fate as the owners of the Red Carpet Inn.  In bringing this action and forcing Mr. Caswell to defend against this suit for three years all the way to trial, the United States has turned a blind eye to the plain language of CAFRA, its clear legislative history, and the governing case law.  In support of forfeiture, the United States has instead trolled through police records to find a relatively small number of drug-related incidents involving a tiny fraction of motel guests over a 20-year period.  The United States Government's attempt to forfeit Mr. Caswell's motel flies in the face of Congress's carefully drawn reform statute.  As Congress noted with respect to the owners of the Red Carpet Inn:  "Good people should not have to fear property seizure because they operate business in high-crime areas.  Nor should they forfeit their property because they have failed to do the work of law enforcement."[3]

## PROPOSED FINDINGS OF FACT

### I.   THE MOTEL CASWELL:  A MOM-AND-POP MOTEL IN TEWKSBURY, MASSACHUSETTS

Russell H. Caswell owns and operates the Motel Caswell, a family-run motel located at 434 Main Street, Tewksbury, Massachusetts.  The Motel Caswell (the "Motel") was built in the 1950s by his father.  After deciding to retire to Florida, Mr. Caswell's father sold the Motel to Mr. Caswell and his wife, Patricia, in 1984.  Since then, Mr. and Mrs. Caswell have owned the Motel.  Mr. and Mrs. Caswell (69 and 71 years old, respectively) live next door to the Motel at 442 Main Street, along with Mr. Caswell's 92-year-old mother-in-law Millie, their son Joseph ("Jay"), their daughter-in-law Kristin, and their 9-year-old grand-daughter Emma.

As part of his responsibilities in managing the Motel, Mr. Caswell oversees operations, conducts maintenance, and keeps the grounds of the Motel.  Mr. Caswell draws an annual salary

---

[3]   H.R. Rep. No. 106-192, at 10 (quoting *U.S. Attorney Here Overstepped Bounds in Motel Seizure*, HOUS. CHRON., Mar. 12, 1998).

of $72,000 operating the motel, which he uses to support himself, his wife, and his mother-in-law.  Mr. Caswell's son, Jay Caswell, is a salaried employee of the motel and assists with maintenance and on occasion fills in as a desk clerk.  Mr. Caswell's daughter, Julie Gath, also is a salaried employee of the motel and assists with bookkeeping.  Mr. Caswell has approximately eight additional employees:  four desk clerks and four housekeepers.  Mr. Caswell ensures that someone is on duty at the desk 24 hours a day.  The Motel has 56 rooms and over the last 20 years, Mr. Caswell has rented roughly 14,000 room nights per year.

## II.   THE GOVERNMENT ATTEMPTS TO TAKE THE MOTEL THROUGH CIVIL FORFEITURE.

On September 29, 2009, the United States filed a forfeiture complaint under 21 U.S.C. § 881(a)(7) against the property on which the Motel Caswell is located ("the Property").[4]  Title to the Property is held by the Tewksbury Realty Trust.  Mr. Caswell is the trustee and, along with his wife, a beneficial owner of the Tewksbury Realty Trust.  Based on the forfeiture complaint, the United States filed a *lis pendens* on the Property.

In its aggressive pursuit to subject the Motel to forfeiture, the United States relies on specific drug-related incidents between 1994 and 2010 involving transient guests and visitors to the Motel.  In each of these incidents, however, local police were investigating third parties, not Mr. Caswell.  Mr. Caswell did not participate and was not involved in any of these incidents. Mr. Caswell never explicitly or implicitly encouraged the use of his motel for any crime.  Indeed, Mr. Caswell never knew that a guest of the Motel was engaging in drug activity at the time the guest checked in or at any point during his or her stay.  If he had known, he would not have rented a room to such a guest or, upon learning of such activities, he would have kicked them out

---

[4] The complaint was filed against "the real property located at 434 Main Street, Tewksbury, Massachusetts, including all buildings, appurtenances and improvements thereon, as described in more detail in a deed recorded in Book 2056, Page 118 of the Middlesex North County Registry of Deeds."  Compl. ¶ 2.  For convenience, this brief refers to the property sought to be forfeited as the Motel Caswell, or the Motel.

of his motel, out of concern for the security of his family.

Nevertheless, the United States claims Mr. Caswell should forfeit his motel because he was made aware of drug-related crime occurring on the premises *after* the perpetrators had been arrested, and allegedly failed to take sufficient measures to stop the illegal activity.  However, Mr. Caswell took reasonable steps to discourage criminal activity from occurring on his property.  On certain occasions, Mr. Caswell, his employees, or patrons called Tewksbury police officers to inform them of suspicious activity at the Motel.  Additionally, Mr. Caswell has cooperated completely with law enforcement officials and offered any requested assistance in their investigations of third parties—even offering free rooms to police officers conducting sting operations or surveillance of individuals suspected of drug activity.  Moreover, the police never informed Mr. Caswell of any other steps he should take to curb drug activity.

Regardless of these earnest efforts by Mr. Caswell, title to his property will be transferred to the United States if the Government prevails in this forfeiture action.

## III.   A CASE OF HISTORY REPEATING:  THE EXTENSIVE LEGISLATIVE HISTORY OF CAFRA[5]

In light of prevalent and well-documented forfeiture abuse, Congress enacted substantial reforms to federal forfeiture laws, two of which are pertinent to this case.  First, Congress clarified that for property to even be forfeitable because it is used to commit or facilitate a crime giving rise to forfeiture, the property must have a "substantial connection" to the underlying crime.  Second, Congress established a safe-harbor provision for innocent owners of property that is subject to forfeiture.

---

[5]  CAFRA's legislative history stretches over four years from the introduction of competing bill in the House of Representatives to its sponsors' floor statements on the day it passed in April 2000.  "In many cases, provisions ultimately included in CAFRA can be traced directly back to provisions introduced by Rep. Henry J. Hyde (R. Ill.) or drafted the Department of Justice and introduced by then-Rep. Charles E. Schumer (D. N.Y.)."  Stefan D. Cassella. "The Civil Asset Forfeiture Reform Act of 2000:  Expanded Government Forfeiture Authority and Strict Deadlines" Journal of Legislation 27.1 (2001): 97-151, *available at,* http://works.bepress.com/stefan_cassella/14.

**A.  CAFRA Codifies the "Substantial Connection" Requirement.**

In 1996, the United States Department of Justice proposed the "substantial connection" language to clarify the degree of connection required between the property sought to be forfeited and the underlying crime giving rise to forfeiture.  *See* Civil Asset Forfeiture Reform Act, *Hearing Before the Committee on the Judiciary*, 104th Cong., 56 (1996).  Although a majority of courts already interpreted existing forfeiture statutes to require a substantial connection, some courts interpreted "use" or "facilitate" broadly to require only a "nexus."  The "substantial connection" requirement, ultimately adopted in the Senate amendment to H.R. 1658, was intended to codify the majority rule.[6]

In his floor statement during CAFRA's passage, the late Representative Henry Hyde, who was long concerned with reforming the loose standards regarding so-called "facilitation forfeiture,"[7] stated that the provision:

> provides that the substantial connection test should be used whenever facilitating property is subject to civil forfeiture under the U.S. Code.  And the test is intended to mean something, it is intended to require that facilitating property have a connection to the underlying crime *significantly greater than just "incidental" or "fortuitous."*

Attachment to Floor Statement of Rep. Henry Hyde, H.R. 1658 (April 11, 2000), *available at* http://judiciary.house.gov/legacy/0411att.htm ("Hyde Floor Statement") (emphasis added). After criticizing decisions in which "courts have been much too liberal" in finding a connection between the property and the forfeitable offense, Rep. Hyde specifically cited the following cases as examples that would fail to meet the substantial connection test under the newly enacted statute:

---

[6]  Stefan D. Cassella, *supra*. at.n. 5, at 15.  Mr. Cassella was the principal drafter of the Justice Department's asset forfeiture reform proposals.

[7]  *See* Hyde, *Forfeiting Our Property Rights:  Is Your Property Safe from Seizure*? 61 (1995).

- forfeiture of 16-acre ocean-side estate on which co-tenant in common grew 385 marijuana plants on several plots scattered throughout the property for personal use;[8]

- forfeiture of home because owner grew 17 stalks of marijuana in backyard for personal use;[9] and

- forfeiture of property because owner made or received ten calls involving drug offenses.[10]

*Id*.  These examples show that the mere fact that an owner of property himself committed an offense on his property was not sufficient to establish a substantial connection.

**B.  CAFRA's Innocent Owner Defense Offers Meaningful Protection.**

In addition to the substantial connection requirement, one of the other most significant reforms of CAFRA was to establish a uniform affirmative defense that would offer meaningful protection to innocent property owners and exempt them from the otherwise harsh results of forfeiture.  In a much criticized decision, the Supreme Court ruled in 1996 that an innocent owner defense was not constitutionally required.  *Bennis v. Michigan*, 516 U.S. 442 (1996).  In pointing out the problem with "virtually unbridled power to confiscate vast amounts of property where professional criminals have engaged in illegal acts," the dissenting Justices used the following examples:

> Some airline passengers have **marijuana cigarettes in their luggage; some hotel guests are thieves**; some spectators at professional sports events carry concealed weapons.

*Id*. at 458 (Stevens, J., Souter, J., Breyer, J., *dissenting*) (emphasis added).  During committee hearings on CAFRA, none other than the current Attorney General, Eric Holder, referenced the Supreme Court's decision in *Bennis* in his testimony in support of expanding the availability of the innocent owner defense:

---

[8]  *United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.*, 960 F.2d 200, 203 & 205 (1st Cir. 1992).

[9]  *United States  v. Premises and Real Property at 250 Kreag Rd.*, 739 F. Supp. 120, 124 (W.D.N.Y. 1990)

[10]  *U.S. v. Zuniga*, 835 F. Supp. 622 (M.D. Fla. 1993).

> We said before and say again that there should be a uniform innocent owner defense available to all claimants in all civil forfeiture cases.  While the Supreme Court held in *Bennis v. Michigan* that an innocent owner defense is not mandated by the Due Process Clause of the Fifth Amendment, that does not mean Congress cannot enact such protection by statute.  We think it should.[11]

And Congress agreed.  "Believing that a meaningful innocent owner defense is required by fundamental fairness," Congress articulated the problem with existing law:

> Not only are these statutory innocent owner defenses nonuniform, but the[ir] protections . . . have been seriously eroded by a number of federal courts ruling that qualifying owners must have had no knowledge *and* provided no consent to the prohibited use of the property.  Such an interpretation means that owners who try to end the illegal use by others of their property cannot make use of the defense simply because they knew about such use.

H.R. Report 106-192, at 15 (1999).

Foremost in Congress's mind when enacting CAFRA's innocent owner defense was a much-publicized account of the seizure and attempted forfeiture of the Red Carpet Inn by the United States Attorney's Office in Houston.  According to the Justice Department, soon after the motel was transferred to new ownership, drug-related arrests increased over 300 percent and police seized narcotics worth approximately $800,000 over a two-year period.[12]  This is a far cry from the level of crime the United States alleges occurred at the Motel Caswell.  After nearly three years of local police suggesting various ways the owner could curb drug activity at the Red Carpet Inn—all of which were ignored—the United States sought forfeiture of the motel.

Despite the amount of crime occurring at the Red Carpet Inn and the owner's unwillingness to adopt specific suggestions of the local police, it was intolerable to Congress that the federal government could forfeit a legitimate business owned by an innocent person.  This

---

[11] Prepared Statement of Eric H. Holder, Jr., Deputy Attorney General, *Oversight of Federal Asset Forfeiture: Its Role in Fight Crime:  Hearing on Federal Asset Forfeiture, Focusing on Its Role in Fighting Crime and the Need for Reform of the Asset Forfeiture Laws Before the S. Comm. on the Judiciary*, 106th Cong. 106-673 (1999), *available a*t http://www.gpo.gov/fdsys/pkg/CHRG-106shrg66959/pdf/CHRG-106shrg66959.pdf.

[12] Prepared Statement of the Department of Justice, S. Rep. No. 106-673, at 119 (1999).

sentiment is reflected in the following statements by legislators on both sides of the aisle:

> In the past year, Americans have had firsthand experience with what can happen when a prosecutor with all the powers of his office throws judgment to the wind and succumbs to zealotry. There is one example of a motel that was being used by drug dealers. There was no allegation that the hotel owners participated in any crimes. Indeed, the motel people had called the police dozens of times to report suspected drug-related activity in the motel's rooms by some of its overnight guests. I mean, they are doing what an honest citizen should do; they called and reported it. But the government said they didn't do all the security measures suggested. . . And because they didn't, they were giving tacit consent to the drug activity, and so they seized the motel.

S. Rep. No. 106-673, at 5 (July, 21, 1999)(statement of Sen. Patrick Leahy).

> [A] safe harbor is created for an owner who notifies police and revokes or attempts to revoke (to the extent permitted by law) permission to use the property by those who are using it in the course of criminal activity. ***The owner's obligations end right there—property owners should not have to assume the responsibilities of police to stop crime.*** In the Red Carpet Inn incident described earlier, the hotel owner could have taken advantage of the bill's safe harbor by (as he did) notifying police of drug sales taking place at the motel and making a good faith attempt to evict the responsible motel guests from their rooms.

H.R. Rep. No. 106-192, at 15 (July 18, 1999) (report of Rep. Henry Hyde, Chairman of the House Judiciary Committee) (emphasis added).

If Congress was outraged by the possible forfeiture of the Red Carpet Inn, then surely by passing CAFRA, it intended to protect innocent owners like Mr. Caswell, whose property has seen much less crime.

## REQUESTED RULINGS OF LAW

This Court should grant judgment in favor of Claimant. First, this Court should hold that the United States ("Government") cannot meet its burden to prove that the Motel Caswell is subject to forfeiture because there is no substantial connection between it and any drug crimes committed by transient guests or their visitors. The plain meaning of the phrase "substantial connection," as applied by courts, belies any claim that the Motel is substantially connected to a

8

drug crime merely because it happens to be the scene of the drug-related activity committed by independent third parties. Additionally, the legislative history is unmistakable: Congress did not intend to reach property with only a fortuitous or incidental relationship to the underlying crime giving rise to forfeiture. In arguing to the contrary, the Government attempts to water down the substantial connection test into requiring only that the crime occurred on the property. This Court should reject the Government's attempt to minimize its burden of proof as contrary to the plain language of the statute, the governing case law, and the legislative history.

Second, this Court should hold that Mr. Caswell is the very model of an innocent owner contemplated by Congress when enacting 18 U.S.C. § 983(d). At the time each of the illegal acts giving rise to forfeiture occurred, Mr. Caswell simply did not know that a particular guest was engaged in illegal activity. Furthermore, to the extent this Court accepts the Government's unfounded attempt to graft a negligence theory of "constructive" knowledge onto the statute, Mr. Caswell took reasonable steps to discourage criminal activity on his property.

I.       THIS COURT SHOULD HOLD THAT THE MOTEL CASWELL IS NOT SUBJECT TO FORFEITURE BECAUSE THERE IS NO SUBSTANTIAL CONNECTION BETWEEN THE MOTEL AND DRUG CRIMES COMMITTED BY TRANSIENT THIRD PARTIES.

The Government premises its authority to forfeit Mr. Caswell's motel on 21 U.S.C. § 881(a)(7) which subjects to forfeiture:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a [controlled substance] violation . . . punishable by more than one year's imprisonment.

Despite the fairly broad language of this provision of the forfeiture statute, Congress made clear that when the Government's theory of forfeiture is based on property being "used to commit or facilitate the commission of a criminal offense," the Government must also "establish that there

was a substantial connection between the property and the offense."  18 U.S.C. § 983(c)(3).

Moreover, "the burden of proof is on the Government to establish by a preponderance of the

evidence that the property is subject to forfeiture."  *Id.* § 983(c)(1).  Finally, this Court must

follow the "well-established rule that federal forfeiture statutes must be narrowly construed

because of their potentially draconian effect."  *United States v. 221 Dana Ave.*, 261 F.3d 65, 74

(1st Cir. 2001) (citing *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 122-23 (1993)).

> **A.      In Requiring A Substantial Connection, CAFRA Plainly Requires The Government To Show A Significantly Greater Connection Than The Mere Fact That Various Drug Crimes Committed By Third Parties Occurred At The Motel.**

To demonstrate that a property is subject to forfeiture under a "use" or "facilitation"

theory, the Government must show a substantial connection between the property and the

underlying crimes giving rise to forfeiture.  18 U.S.C. § 983(c).  The Government asks this Court

to ignore the plain meaning of the term "substantial."[13]  In ordinary usage, "substantial" means

"considerable in importance, value, degree, amount, or extent,"[14] "fairly large," or "essential."[15]

Under any definition, the Government cannot prevail.

Here, the only connection the Government can show is that over the course of two

decades, a small number of unrelated and transient third-parties surreptitiously used the motel

rooms in an unauthorized manner for drug activity.  Far from being substantially connected, the

Motel just happened to be the scene of the crime because independent third parties decided to

stay at the motel and engage in clandestine drug-related behavior that they could have chosen to

do anywhere.  The property on which crime happened to occur because of intervening third-

---

[13]  This Court must give effect to every clause and word of the statute.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (citing *United States v. Menasche,* 348 U.S. 528, 538-39 (1955).

[14]  The American Heritage Dictionary of the English Language (5th ed. 2011), *available at* http://www.ahdictionary.com/word/search.html?q=substantial.

[15]  Webster's New World College Dictionary (4th ed. 2004), *available at* http://www.webster-dictionary.org/definition/substantial.

parties does not have an important or fairly large relationship to that crime, and certainly not an essential relationship.

A clear example of what constitutes a substantial connection is provided by contrasting two First Circuit cases. In *United States v. 6 Fox Street*, 480 F.3d 38 (1st Cir. 2007), the government sought to forfeit numerous assets owned by a convicted drug trafficker. Affirming the district court's finding of a substantial connection between the various parcels of real property and the claimant's convicted drug offenses, the First Circuit observed that all the property was purchased, at least in part, with drug proceeds. *Id*. at 42. Moreover, claimant stored and distributed marijuana on five parcels of property as part of an ongoing drug trafficking operation. *Id*. at 43 ("[T]he undisputed material facts [ ] conclusively establish the requisite substantial connection between each of those properties and drug sales" for which claimant was convicted). By contrast, in a pre-CAFRA case,[16] the First Circuit held that the government failed to adduce sufficient proof to justify forfeiture of a convicted drug trafficker's residence. *United States v. Parcel of Land and Residence at 28 Emery Street, Merrimac, Massachusetts*, 914 F.2d 1 (1st Cir. 1990). Significantly, the court noted that the government offered no evidence that the claimant sold, processed, produced, or stored drugs at his home. *Id*. at 4. "[T]he problem with the government's proof is the lack of a solid evidentiary basis linking the [property] to the sale of drugs." *Id*.

Here, the mere fact that the Motel happened to be the scene of drug crimes committed by independent third parties does not constitute a substantial connection to those crimes. When the

---

[16] "It is appropriate to rely upon forfeiture case law decided before the enactment of CAFRA. Although those cases applied the less-burdensome probable cause standard, '[f]actors that weighed in favor of forfeiture in the past continue to do so now—with the obvious caveat that the government must show more or stronger evidence establishing a link between forfeited property and illegal activity.'" *United States v. $21,510.00 in U.S. Currency*, 144 Fed. Appx. 888, 890 n.2 (1st Cir. 2005), *quoting United States v. Funds in the Amount of $30,670.00*, 403 F.3d 448, 469 (7th Cir. 2005).

property is the site of the underlying crimes giving rise to forfeiture, courts find a substantial onnection when:  (1) the claimant himself uses or intends to use his property to store or distribute drugs; or (2) the claimant has a special relationship with the individual directly involved in the drug crime.  *See, e.g.*, *United States v. One Parcel of Real Property*, 900 F.2d 470 (1st Cir. 1990) (finding, as a matter of law, substantial connection between home of property owners, convicted of possession of cocaine with intent to distribute, and their narcotics activity where claimant used home "to unlawfully store, conceal, possess, prepare, and distribute quantities of cocaine"); *United States v. 45 Claremont Street*, 395 F.3d 1, 2, 4 (1st Cir. 2004) (noting district court found substantial connection between claimant's house and drug trafficking of claimant's boyfriend where boyfriend used drug proceeds for down payment and renovations to house).  These two factual circumstances make sense in light of the deterrence rationale for civil forfeiture.

Ignoring Mr. Caswell's non-involvement, the utter lack of any personal benefit, and the complete absence of any agency relationship,[17] the Government attempts to stretch the case law to satisfy the substantial connection test.  In contrast to the two circumstances above, Mr. Caswell was not involved in any of the drug crimes committed by transient guests of his motel. The various perpetrators of these crimes were making unauthorized use of the Motel to engage in illicit drug activity.  *Cf. 3234 Wash. Ave. N., Minneapolis, MN.*, 480 F.3d at 846 (recognizing that "many legitimate non-profit institutions own real property, and it is not unrealistic to posit an institutional owner's otherwise innocent premises being used for illicit drug trafficking by [others] misusing their right of access and authority").  Moreover, the various third parties were not associated with each other or engaged in a continuing or common criminal enterprise.

---

[17]  *See United States v. 3234 Wash. Ave. N., Minneapolis, MN.*, 480 F.3d 841, 846 (8th Cir. 2007) (using agency principles to determine whether there was a substantial connection between the claimant's real property and the trafficking of drugs on the property).

Unrelated to each other, it would be impossible for Mr. Caswell to be aware of a pattern of behavior by specific guests.

Particularly in situations where the claimant is not involved, receives no benefit, and no agency relationship exists between the owner of the property and the perpetrators of the crime, merely being the site of a drug transaction is not sufficient to demonstrate a substantial connection. *See, e.g.*, *United States v. Two Tracts of Real Property with Bldgs. Appurtenances and Improvements*, 998 F.2d 204, 212 (4th Cir. 1993) ("[W]e twice have rejected[] the notion that simply because land is the situs of crime, it is forfeitable.") (applying substantial connection test). Indeed, the Government cannot point to a single case in which the commission of crime by a transient, unrelated third party, with no agency relationship to the owner, was sufficient to subject the property to forfeiture. The Government's failure to do so is not surprising in light of the clear legislative history.

    **B.**    **The Legislative History Is Unmistakable: "Substantial Connection" Means Essential, Or Indispensable—Something Significantly Greater Than A Mere Incidental or Fortuitous Connection.**

The legislative history of both Section 881(a)(7) and CAFRA confirms the plain meaning of "substantial connection" as essential or indispensable. First, in adopting Section 881(a)(7), Congress sought to close a loophole in the existing forfeiture law:

> Under current law, if a person uses a boat or car to transport narcotics or uses equipment to manufacture dangerous drugs, his use of the property renders it subject to civil forfeiture. But if he uses a secluded barn to store tons of marihuana or uses his house as a manufacturing laboratory of amphetamines, there is no provision to subject his real property to civil forfeiture, even though its use was ***indispensable*** to the commission of a major drug offense and the prospect of the forfeiture of the property would have been a powerful deterrent.

Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225 (1984) (emphasis added). Congress's reference to property that is "indispensable" provides a clear indication that in

enacting Section 881(a)(7), Congress only intended to cover property essential to the commission of a drug felony, rather than property which merely happened to be the locus of a crime, especially because of intervening third-party conduct.  The examples of the barn used to store drugs and the laboratory used to manufacture drugs are instructive in this regard to show that the property must be indispensable or essential to the crime.

Additionally, the above-quoted passage in Senate Report No. 98-225 makes clear that Congress intended the provision to apply to individuals who were using their **own** property to commit or facilitate drug felonies, not individuals whose property was commandeered for unauthorized use by third parties.  This point is highlighted by the fact that Congress viewed the provision as providing a "powerful deterrent."  Forfeiting an establishment like a motel that was used by independent and various third parties to use, sell, or even manufacture drugs, would serve no deterrent effect on those committing the drug felonies, while it would severely penalize the innocent proprietor.

Relying on the above-quoted passage, a majority of courts, including the First Circuit, required the government to show under Section 881(a)(7), a substantial connection between the property sought to be forfeited and the illegal drug activity.  *See, e.g.*, *United States v. 28 Emery Street, Merrimac, MA.*, 914 F.2d 1 (1st Cir. 1990) ("We have consistently required that there be a "substantial connection" between the property forfeited and the drug activity.") (collecting cases).  As noted *supra* at p. 5, CAFRA codified this majority rule to end the practice of forfeiting property with only an incidental or fortuitous connection to the underlying crime, as demonstrated by Rep. Hyde's floor statement.  Hyde Floor Statement (citing *United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.*, 960 F.2d 200 (1st Cir. 1992)).  In *Great Harbor Neck*, a court ordered the forfeiture of a 16-acre estate on which one of the owners

grew 385 marijuana plants for his personal use scattered throughout the property. 960 F.2d at

203. Representative Hyde specifically cited this First Circuit case, among others, as an example

that would fail to meet the substantial connection test under CAFRA. If an owner's use of his

property to plant, cultivate, and harvest marijuana for personal use does not meet the substantial

connection test, then the unauthorized use of a handful of motel rooms by various third parties to

engage in clandestine drug activity must certainly fail the substantial connection test.

The Government must be held to its burden of proving a substantial connection between

the Motel Caswell and the crimes committed by a small fraction of its guests. To water down the

"substantial connection" requirement in the manner urged by the Government would severely

erode a threshold protection for innocent property owners and open the door to the very kind of

government overreaching that Congress specifically enacted CAFRA to prevent.

Although Congress included an innocent owner defense in which an owner can contest the

forfeiture, this affirmative defense neither relaxes the meaning of "substantial connection" nor

lessens the Government's burden to prove that substantial connection.

## II.     THIS COURT SHOULD HOLD THAT MR. CASWELL IS AN INNOCENT OWNER UNDER 18 U.S.C. § 983(d).

As detailed above in Section III of the Proposed Findings of Fact, Congress had motel

owners like Mr. Caswell in mind when enacting the innocent owner defense under CAFRA.

Under CAFRA, "an innocent owner's interest in property shall not be forfeited under any civil

forfeiture statute." 18 U.S.C. § 983(d)(1). An innocent owner is "an owner who—

    (i)     did not know of the conduct giving rise to forfeiture; or

    (ii)    upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

*Id*. § 983(d)(2)(A). As an affirmative defense, it is Mr. Caswell's burden to prove that he is an

innocent owner by a preponderance of the evidence.  *Id.* § 983(d)(1).  Based on the evidence presented at trial, this Court should conclude that Mr. Caswell has met his burden.

      **A.  Mr. Caswell Did Not Know of the Drug Crimes Giving Rise to Forfeiture.**

      Mr. Caswell is the very model of an innocent owner contemplated by Congress when codifying this affirmative defense.  At the time any of his guests checked in or at any point during their stay, Mr. Caswell simply did not know that a particular motel guest or visitor was using, selling, or manufacturing drugs.  Indeed, it would have been impossible for Mr. Caswell to know such information without invading his guests' recognized expectations of privacy.

      Contrary to the Government's assertion, the knowledge required by the statute is "actual knowledge," not "constructive knowledge" of the particular conduct giving rise to forfeiture. *See United States v. 2001 Honda Accord EX VIN # 1HGCG22561A035829*, 245 F. Supp. 2d 602, 611-12 (M.D. Pa. 2003) (rejecting constructive knowledge standard and finding that innocent owner defense was established where claimant did not know that driver to whom she lent her vehicle was trafficking illegal drugs); *see also United States v. 45 Claremont St.*, 108 Fed. App'x 651, 655 (1st Cir. 2004) (discussing an innocent owner claim in terms of whether the property owner knew of the ***particular drug transaction*** identified by the government's complaint as the conduct giving rise to forfeiture).  In a pre-CAFRA case, the Eleventh Circuit considered the knowledge element of the innocent owner defense to Section 881(a)(6), on which the uniform innocent owner defense enacted by CAFRA is modeled.  *United States v. Four Million, Two Hundred Fifty-Five Thousand Dollars*, 762 F.2d 895, 906 (11th Cir. 1985).  The court rejected the government's arguments about what claimant "should have known" and held that an owner's entitlement to the defense "turns on the claimant's actual knowledge, not constructive knowledge."  *Id.*  The government argued in that case that the court "should replace the 'actual

knowledge' standard with the 'negligence' standard,"—an argument rejected by the court as inappropriate in light of the statutory language. *Id*. at 906 n.24. *See also United States v. 6960 Miraflores Ave.,* 995 F.2d 1558, 1561 (11th Cir. 1993) (defense is available if the claimant can prove absence of "actual knowledge"); *United States v. 5000 Palmetto Drive*, 928 F.2d 373, 375 (11th Cir. 1991) (ruling that constructive knowledge is insufficient to justify forfeiture).

Moreover, as the proprietor of the Motel, Mr. Caswell did not turn a blind eye to crimes committed by a small fraction of motel guests over the course of two decades. To the contrary, it was in Mr. Caswell's personal interest to not only stop any unauthorized use of his motel by guests concealing drug activity, but also to do whatever was feasible to discourage such crimes.

Most willful blindness cases occur in the criminal context. These cases recognize that, as an initial matter, the bridge from actual knowledge to willful blindness cannot be crossed without the Government presenting specific evidence that Mr. Caswell had a suspicion his motel was involved in criminal activity, and that he deliberately avoided taking steps to confirm or deny those suspicions. *See, e.g.*, *United States v. Alston-Graves*, 435 F.3d 331, 336-42 (D.C. Cir. 2006) (collecting authority and recounting history of the inference from willful blindness to actual knowledge); *United States v. Leahy*, 464 F.3d 773, 796 (7th Cir. 2006) ("Inherent in this [jury] instruction is the difficulty in distinguishing between the cutting off of one's curiosity and a simple lack of effort. . . . The latter cannot be punished."). The Government cannot adduce such evidence here where Mr. Caswell, among other things, worked with police to provide them with free rooms to conduct sting operations and surveillance.

Courts use a similar analysis in the forfeiture context. However, the facts of those cases in which courts find willful blindness bear no similarity to the present case. For example, in *United States v. Collado*, an individual controlled a $20 million, drug-distribution enterprise that

he operated for years out of a building he occupied with his mother, the claimant. 348 F.3d 323 (2d Cir. 2003). At times, the claimant took calls on behalf of her son, even warning his drug clientele not to transact business by phone but to visit in person. *Id*. at 325-26. Moreover, the son used the claimant's phone (often while she was present) to set up more than 640 drug sales in just one three-month period. *Id*. at 327. In light of these facts, it was simply not credible to the court that the claimant, who owned the property, could have escaped notice of the drug dealing but for willful blindness. *Id*. at 327-28. Unlike a case in which a mother witnessed, and at times participated, in the criminal activity of her son, in this case, transient, unrelated visitors to the Motel engaged in drug activity behind closed doors and were unobserved by Mr. Caswell.

Even if this Court accepts the Government's unsupported attempt to graft a negligence theory of constructive knowledge onto the statute, Mr. Caswell would not have constructive knowledge of drug activity occurring at the Motel. Past drug activity by a third party cannot provide constructive knowledge or awareness of future drug activity by another, unrelated third party.

### B. Mr. Caswell Took Reasonable Steps to Stop the Unauthorized Use of His Property for Drug Crimes.

Finally even assuming that post-hoc knowledge of drug crimes is somehow probative on the question of Mr. Caswell's knowledge under the innocent owner defense, Mr. Caswell took reasonable steps to discourage and stop the unauthorized use of his property by third parties to commit or facilitate drug crimes.

CAFRA enumerates specific examples of reasonable steps taken by a property owner that would be sufficient to establish the innocent owner defense. 18 U.S.C. § 983(d)(2)(B). First, the statute provides a safe harbor for owners who notify police of the illegal conduct. Second, owners can take advantage of the safe-harbor by either: (1) making a good faith attempt to

18

revoke permission to use the property; or (2) taking reasonable action *in consultation with* police to discourage or prevent the illegal use of the property.  *Id*.[18]

As noted above, Congress singled out as improper the actions of the United States in attempting to forfeit the Red Carpet Inn:

> The government claimed the hotel deserved to be seized and forfeited because management had failed to implement all of the 'security measures' dictated by law enforcement officials, such as raising room rates.  This failure to agree with law enforcement about what security measures were affordable and wise from a legitimate business-operating standpoint was deemed to be 'tacit approval' of illegality, subjecting the motel to forfeiture.

H.R. Rep. No. 106-192, at 10 (1999).  The House Report noted the "absurdity and danger of this government forfeiture theory against legitimate business," concluding that no one should "forfeit their property because they have failed to do the work of law enforcement."  *Id*.  Courts also have recognized that "a property owner is not required to take heroic or vigilante measures to rid his or her property of narcotics activity . . . Indeed, encouraging such a standard would result in the dangerous precedent of making property owners in drug-infested neighborhoods into substitute police forces."  *United States v. 710 Main St*., 753 F. Supp. 121, 125 (S.D.N.Y. 1990).

Additionally, the legislative history underscores that "the property owner is not required to take every conceivable action which could be considered reasonable, but only to take actions which are in total a reasonable response to the conduct giving rise to forfeiture."  H. R. Rep. No.

---

[18]  The full text of the provision states:

(B)(i) For the purposes of this paragraph, ways in which a person may show that such person did all that reasonably could be expected may include demonstrating that such person, to the extent permitted by law—

(I)  gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and

(II)  in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property.

(ii)  A person is not required by this subparagraph to take steps that the person reasonably believes would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger.

106-192 at 23 (1999). *See also United States v. Lot Numbered One of the Lavaland Annex*, 256 F.3d 949, 954-57 (10th Cir. 2001) (owner is entitled to notice of the particular steps that the government believes it should have taken to prevent drug trafficking and opportunity to present evidence and argument as to why those steps were not reasonable under the circumstances).

Here, Mr. Caswell not only notified police of suspicious activity, but even provided free rooms to law enforcement while they conducted sting operations and surveillance of individuals suspected of drug activity. Moreover, the police never communicated specific actions Mr. Caswell should take to curb criminal drug activity.

Thus, even if this Court finds a substantial connection between the drug crimes presented by the Government and the Motel, and even if this Court adopts the negligence theory of constructive knowledge that has expressly been rejected by other circuits, judgment in favor of Mr. Caswell is still warranted because Mr. Caswell took reasonable steps to stop or discourage the illegal use of his Motel.

## CONCLUSION

Similar to the Red Carpet Inn case, the forfeiture action here "should never have been undertaken in the first place." H.R. Rep. No. 106-192, at 11 (1999). But having been undertaken and zealously pursued to trial, there can be no doubt that the Motel Caswell cannot be forfeited. The foregoing reasons necessitate judgment in favor of Claimant.

Dated:  October 30, 2012

Respectfully submitted,

/s/ Scott G. Bullock
Scott G. Bullock, *pro hac vice*
Lawrence G. Salzman, *pro hac vice*
Darpana M. Sheth, *pro hac vice*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900

Arlington, VA 22203
Tel:  (703) 682 – 9320
Fax:  (703) 682 – 9321
sbullock@ij.org; lsalzman@ij.org; dsheth@ij.org
*Attorneys for Claimant*

George W. Skogstrom, Jr. (BBO #552725)
Tiffany L. Pawson (BBO # 672713)
SCHLOSSBERG | LLC
35 Braintree Hill Office Park, Suite 204
Braintree, MA 02184
Tel:  (781) 848 – 5028
Fax: (781) 848 – 5096
gskogstrom@sabusinesslaw.com
tpawson@sabusinesslaw.com
*Local Counsel for Claimant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing Claimant's Trial Brief was filed with the

Electronic Court Filing system and will be sent electronically to the registered participants as

identified on the Notice of Electronic Filing.

/s/    Scott G. Bullock
Scott G. Bullock, *pro hac vice*
